936 F.2d 759
 Fed. Sec. L. Rep. P 96,061
I. MEYER PINCUS & ASSOCIATES, P.C., Plaintiff-Appellant,
v.
OPPENHEIMER & CO., INC., Oppenheimer Capital Corporation,
Quest for Value Advisors, Inc., and Quest for
Value Dual Purpose Fund, Inc.,
Defendants-Appellees.
 No. 1124, Docket 90-7993.
 United States Court of Appeals,
Second Circuit.
 Argued March 15, 1991.
Decided June 27, 1991.
 
 Richard M. Meyer, Milberg Weiss Bershad Specthrie & Lerach, New York City (Michael C. Spencer, Milberg Weiss; Mordecai Rosenfeld, P.C., Irwin Ross, of counsel), for plaintiff-appellant.
 Michael B. Reuben, Gordon Hurwitz Butowsky Weitzen Shalov & Wein, New York City (Lawrence J. Zweifach, Gordon Hurwitz Butowsky Weitzen Shalov & Wein, Robert M. Abrahams and Chaye Zuckerman Shapot, Schulte Roth & Zabel, of counsel), for defendants-appellees.
 Before PIERCE, NEWMAN and WALKER, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 Plaintiff I. Meyer Pincus & Associates ("Pincus"), a one-man professional corporation, appeals from an Opinion and Order dismissing his Second Amended Complaint by the United States District Court for the Southern District of New York (John Keenan, Judge ). The complaint pleaded two claims under the securities laws, one based on Section 11 of the Securities Act of 1933, 15 U.S.C. Sec. 77k ("Section 11"), and one based on Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b) ("Section 10(b)"), and Rule 10b-5 thereunder, 17 C.F.R. Sec. 240.10b-5. Judge Keenan found the Section 11 claim barred by the statute of limitations and dismissed the Section 10(b) claim for failure to plead fraud in conformity with the requirements of Fed.R.Civ.Pro. 9(b). We affirm the judgment on the grounds that the complaint fails to state a claim.
 
 Background
 
 2
 This case concerns an alleged misstatement in a prospectus. In February 1987, defendant Quest for Value Dual Purpose Fund, Inc. ("The Fund"), a fund registered pursuant to the Investment Company Act of 1940, offered 36 million shares for sale, pursuant to a registration statement and the prospectus. Defendant Oppenheimer & Co., a broker-dealer registered with the SEC, was the principal underwriter of the Fund. The Fund is managed by defendant Oppenheimer Capital Corporation through its subsidiary, defendant Quest for Value Advisors, Inc.
 
 
 3
 The Fund is a closed-end investment company. As such, it operates with a fixed number of shares outstanding. Closed-end funds are not obligated to redeem shares purchased by investors, in contrast to so-called "open-end" funds, which typically redeem shares at "net asset value." Rather, investors must resell their closed-end shares in the secondary market.
 
 
 4
 On February 23, 1987, Pincus purchased 8,000 income shares of the Fund. On March 7, 1988, Pincus commenced this action. Both the original and amended forms of the complaint allege that the prospectus contains a single material misrepresentation about the trading value of closed-end fund shares, in violation of Section 11 and Section 10(b). The claimed offending language, which appears at page 5 of the prospectus, is as follows:
 
 
 5
 The shares of closed-end investment companies frequently trade at a discount from or premium to their net asset values. The Shares are also expected to trade at a discount or premium....
 
 
 6
 Pincus alleges that this statement is materially misleading since its message is that closed-end investment company shares are as likely to sell at premiums or discounts, whereas, in fact, shares of closed-end investment companies "usually and typically sell at discounts" from their net asset value, and not frequently at premiums.
 
 
 7
 Defendants moved to dismiss the First Amended Complaint or for summary judgment. Judge Keenan dismissed the First Amended Complaint with leave to replead, holding that Pincus had failed to plead compliance with the strict one-year statute of limitations for Section 11 actions, and thus the Section 11 claim was time-barred, and also that the Section 10(b) claim failed to allege fraud with requisite particularity. In particular, Judge Keenan held that Pincus had failed to plead facts supporting his allegations of scienter.
 
 
 8
 Pincus then filed the Second Amended Complaint. Defendants renewed their motions, and Judge Keenan dismissed the complaint with prejudice on October 15, 1990. Dismissal was on the same two grounds on which Judge Keenan had dismissed the First Amended Complaint.
 
 
 9
 This appeal followed.
 
 Discussion
 
 10
 An appellate court reviewing the decision of a district court may affirm that decision on any ground which is supported by the record. University Club v. City of New York, 842 F.2d 37, 39 (2d Cir.1988). For the reasons stated below, we affirm Judge Keenan's dismissal of the complaint on the grounds that plaintiff has failed to plead allegations stating a claim under either Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b) or Section 11 of the Securities Act of 1933, 15 U.S.C. Sec. 77k.
 
 
 11
 Both of the securities laws invoked by Pincus require that plaintiff identify a materially misleading statement made by the defendants. Section 10(b) prohibits any person from using or employing any "manipulative or deceptive device" in connection with the sale of a security. Rule 10b-5, 17 C.F.R. Sec. 240.10b-5, issued under that statute, prohibits the making of "any untrue statement of a material fact or [omitting] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." In order to state a claim under this section, plaintiffs must allege, among other things, " 'material misstatements or omissions indicating an intent to deceive or defraud in connection with the purchase or sale of a security.' " McMahan & Co. v. Wherehouse Entertainment, Inc., 900 F.2d 576, 581 (2d Cir.1990) (quoting Luce v. Edelstein, 802 F.2d 49, 55 (2d Cir.1986)), petition for cert. filed, No. 90-293 (8/14/90); Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 reh'g denied, 425 U.S. 986, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976).
 
 
 12
 Section 11 states that any signer, officer of the issuer, or underwriter may be held liable for a registration statement containing "an untrue statement of a material fact or omitt[ing] to state a material fact ... necessary to make the statements therein not misleading...." 15 U.S.C. Sec. 77k(a). We have stated that a violation of Section 11 will be found when material facts have been omitted or presented in such a way as to "obscure[ ] or distort[ ]" their significance. Greenapple v. Detroit Edison Co., 618 F.2d 198, 205 (2d Cir.1980).
 
 
 13
 The central inquiry in determining whether a prospectus is materially misleading under both Section 10(b) and Section 11 is therefore "whether defendants' representations, taken together and in context, would have [misled] a reasonable investor" about the nature of the investment. McMahan, 900 F.2d at 579.
 
 
 14
 In considering whether Pincus' complaint states a claim under either Section 10(b) or Section 11, we examine the prospectus together with the allegations contained on the face of the complaint. We do so despite Pincus' failure to submit the prospectus as an exhibit to the complaint, and despite the fact that the complaint contains only "limited quotation" from that document. See Goldman v. Belden, 754 F.2d 1059, 1066 (2d Cir.1985). The prospectus is integral to the complaint. The claims pleaded therein are based only on an alleged written misrepresentation appearing within the prospectus; plaintiff alleges no misrepresentations stemming from any other source, such as words, conduct, or other documentation. We therefore decline to close our eyes to the contents of the prospectus and to create a rule permitting a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the prospectus to the complaint or to incorporate it by reference. See Field v. Trump, 850 F.2d 938, 949 (2d Cir.1988), cert. denied, 489 U.S. 1012, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989); Furman v. Cirrito, 828 F.2d 898, 900 (2d Cir.1987); 5 C. Wright & A. Miller, Federal Practice & Procedure Sec. 1327, at 489 & n. 15 (when "plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading"). See also Kramer v. Time-Warner, 937 F.2d 767 (2d Cir.1991) (on motions to dismiss, judicial notice may be taken of documents required to be publicly filed). Compare Cosmas v. Hassett, 886 F.2d 8 (2d Cir.1989).
 
 
 15
 Accordingly, we turn to the allegations and the prospectus, bearing in mind that we may affirm the dismissal of a complaint for failing to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232-33, 81 L.Ed.2d 59 (1984). The federal securities laws require that "disclosure in a prospectus must steer a middle course, neither submerging a material fact in a flood of collateral data, nor slighting its importance through seemingly cavalier treatment." Greenapple, 618 F.2d at 210. Nonetheless, such disclosure is not a "rite of confession or exercise of common law pleading. What is required is the disclosure of material objective factual matters." Data Probe Acquisition Corp. v. Datatab, Inc., 722 F.2d 1, 5-6 (2d Cir.1983), cert. denied, 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984).
 
 
 16
 Read in context, the language on page 5, which appears in a single paragraph entitled "Special Considerations," could not mislead any reasonable investor into believing that the Fund was predicting a bright trading future for its shares. Indeed, we find the language remarkably direct. The relevant part of the paragraph reads:
 
 
 17
 The Company is a diversified, closed-end investment company designed primarily for long-term investors and not as a trading vehicle. The shares of closed-end investment companies frequently trade at a discount from or premium to their net asset values. The Shares are also expected to trade at a discount or premium; however, any discount or premium for the Shares may be reduced [near a time at which shares will be redeemed or the Fund converted to an open-end fund.] See "Termination" above and "Determination of Net Asset Value." The Company may reacquire its Shares from time to time.... See "Repurchase of Shares."
 
 
 18
 Rather than suggesting the possibility that Fund shares present any prospect of gains from market trading, the language first cautions the reader that the Fund is not designed to be a "trading vehicle." The reader is then expressly told that Fund shares may very well trade at a discount relative to net asset value.
 
 
 19
 Next, the reader is referred to a section of the prospectus entitled "Determination of Net Asset Value." There the prospectus states exactly the "fact" that Pincus contends has been covered up: "Shares of closed-end investment companies frequently trade at a discount from net asset value, but in some cases trade at a premium." Pincus concedes in his complaint that this language communicates to his satisfaction the likelihood that Fund shares will trade at a discount.
 
 
 20
 Moreover, the sentence that immediately follows specifically warns the investor that the Fund cannot predict the prices at which shares will trade. "Since the market prices of the shares are determined by factors including trading volumes of such shares, general market and economic conditions and other factors beyond the control of the Company, the Company cannot predict whether either the Capital Shares or Income Shares will trade at, below or above net asset value prior to liquidation."
 
 
 21
 The statements contained within the prospectus clearly " 'bespeak caution,' " rather than encouraging optimism. Luce, 802 F.2d at 56 (quoting Polin v. Conductron Corp., 552 F.2d 797, 806 n. 28 (8th Cir.), cert. denied, 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 129 (1977)). We decline to impose liability on such a basis. Id.
 
 
 22
 In ruling that the language on page 5 of the prospectus, read in context, is not materially misleading, we reject Pincus' argument that the language in the section entitled "Determination of Net Asset Value" is "buried in an unrelated portion of the Prospectus." This section, which appears on page 25, is explicitly referenced on page 5, and is also listed in the Table of Contents. Furthermore, the first sentence of the Prospectus Summary, which states that the summary is "qualified in its entirety by reference to the more detailed information included elsewhere in this prospectus," unambiguously communicates the importance of reading all relevant material contained within the prospectus.
 
 
 23
 We therefore hold that a reasonable investor concerned with the market performance of Fund shares would find the earlier referenced language appearing on page 5 of the prospectus, as differentiated from the material in the prospectus as a whole, "so obviously unimportant ... that reasonable minds could not differ on the question of [its] importance." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.1985); see also McMahan, 900 F.2d at 579. No reasonable investor would be misled by the prospectus into believing that the Fund was predicting the success of its shares in a secondary market for them.
 
 
 24
 In any event, we are extremely doubtful that, even read out of context, the language on page 5 can bear the weight of the meaning that Pincus seeks to place upon it. Properly read, the statement is not a "fact" or a "prediction" about the trading value of closed-end shares. Indeed, the prospectus elsewhere explicitly disclaims the making of such a prediction. Rather, the point of the language is apparently to distinguish the market valuation of closed-end fund shares from those of open-end funds, which are redeemable for net asset value. On page 26, the prospectus again states, "The shares of closed-end investment companies generally sell at market prices varying from their net asset values."
 
 
 25
 Moreover, evaluated against the facts about market performance of closed-end fund shares alleged in the complaint, the language on page 5 is literally true. Pincus would concede that shares of closed-end shares do trade at a "discount or a premium" from net asset value. Pincus must strain to the breaking point the language "shares trade at a discount or a premium" in order to present his argument that the Fund has actually communicated the message to investors that such shares "are just as likely to trade at a premium as at a discount."
 
 
 26
 We conclude that Pincus can prove no set of facts which would demonstrate that the language on page 5 of the prospectus, read in context, is materially misleading. As a matter of law, we find that reasonable minds could not differ on this issue. The complaint thus fails to state a claim under either Section 11 of the 1933 Act of Section 10(b) of the 1934 Act.
 
 
 27
 Accordingly, we affirm Judge Keenan's opinion dismissing the complaint.