Mary E. DODDS, Plaintiff,

v.

CIGNA SECURITIES, INC., Cigna Individual Financial Services Company, Inc., Connecticut General Life Insurance Company, Cigna Corporation, and Martin F. Palumbos, Defendants.

No. 92–CV–6053L.

United States District Court,
W.D. New York.

Dec. 15, 1992.

Cathy J. Bardenstein, Gallo & Iacovangelo, Rochester, NY, for plaintiff.

Carolyn G. Nussbaum, Nixon, Hargrave, Devans & Doyle, Rochester, NY, for defendants.

## DECISION AND ORDER

LARIMER, District Judge.

Plaintiff Mary E. Dodds commenced this securities fraud action seeking recision and damages against her former investment advisor, Martin Palumbos ("Palumbos"), and the companies he represented—Cigna Securities, Inc., Cigna Individual Financial Services Company, Inc., Connecticut General Life Insurance Company, and Cigna Corporation (collectively, the "Cigna Companies"). This action revolves around plaintiff's investment in five limited partnerships—Technology Funding Secured Investors III ("TFSI"), Berry and Boyle Development Partners III (Berry and Boyle"), Krupp Cash Plus V ("Krupp"), PLM Equipment Growth Fund V ("PLM"), and Net 2—and her purchase of a single premium annuity policy and a whole life insurance policy in the spring of 1990. Plaintiff alleges that Palumbos and the Cigna Companies recommended that she invest in these limited partnerships and purchase the annuity and life insurance policies despite knowing that they were unsuitable for her financial needs, in that the investments were, *inter alia*, too risky, too expensive, and not liquid enough.

In her amended complaint, plaintiff alleges that Palumbos and the Cigna Companies violated federal securities laws, including section 12(2) of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. § 77*l* (2) (Count one), section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5 (Count three), and that the Cigna Companies are liable as controlling persons under section 15 of the 1933 Act, 15 U.S.C. § 77o (Count two), and section 20 of the 1934 Act, 15 U.S.C. § 78t (Count four), or, alternatively, as aiders and abettors. Plaintiff further alleges several pendant state law claims against Palumbos and the Cigna Companies, including breach of fiduciary duty, common law fraud, negligent misrepresentation, and a violation of § 349 of the General Business Law of the State of New York (Counts five-eleven).

Pending before me now are defendants' motion to dismiss the amended complaint and plaintiff's motion for leave to replead if the amended complaint is dismissed. Defendants contend that plaintiff's federal securities claims should be dismissed because they are untimely under the applicable one-year/three-year limitations period, or, alternatively, because they fail to state a claim upon which relief may be granted, Fed.R.Civ.P. 12(b)(6), or because they fail to plead fraud with sufficient particularity, Fed.R.Civ.P. 9(b). Defendants further contend that if the federal claims are dismissed, the pendent

state law claims should be dismissed for lack of jurisdiction.

For the reasons discussed below, defendants' motion to dismiss is granted, and plaintiff's motion for leave to file a second amended complaint is denied.

## BACKGROUND

The facts alleged in the amended complaint, which must be accepted as true for purposes of this motion, are as follows. On April 18 and 24, 1990, plaintiff purchased shares and units in various securities recommended to her by Martin Palumbos, including 230 units of TFSI for $23,000; 32 units of Berry and Boyle for $16,000; 800 units of Krupp for $16,000; 500 units of PLM for $10,000; and 400 units of Net 2 for $40,000.[1] Plaintiff also purchased a $25,000 single premium annuity policy, and a $250,000 whole life insurance policy with a premium of $36,700.

Plaintiff, an inexperienced first-time investor, was looking to invest approximately $445,000[2] in insurance and retirement benefits that she had received after her husband's death in February, 1990. She sought to invest this money in conservative investments that could generate enough income for her living expenses and for her to pay for the education of her four daughters.

Before making these investments, plaintiff met with Palumbos on several occasions. Plaintiff and Palumbos met for the first time on March 14, 1990. At this meeting, Palumbos told plaintiff that he was a representative of Cigna and that he had helped a number of Eastman Kodak employees with their financial planning. Plaintiff's husband was employed at Kodak before his death. Palumbos

told plaintiff that after assessing her financial situation he would consult with other Cigna representatives and together they would develop an investment plan that would suit her needs. He also told plaintiff that rather than charging her a fee he would be paid through commissions on the investments she made.

Palumbos and plaintiff met again on April 1, 1990. At this meeting, Palumbos gave plaintiff a number of prospectuses and marketing materials that detailed the securities and insurance products that he was recommending. Included with these materials were the prospectuses on TFSI, Berry and Boyle, Krupp, PLM, and Net 2. Palumbos told plaintiff that he would return in two weeks to complete the transactions.

Palumbos returned on April 18, 1990. He asked plaintiff whether she had any questions concerning the investments he had recommended. Plaintiff responded that she had not read the prospectuses because "they looked like Greek" to her. Palumbos assured her that the investments were suitable. Plaintiff, consequently, authorized Palumbos to invest the funds she had received from her husband's SIP and IRA accounts. Plaintiff then signed the required purchase orders, disclosure statements, and subscription agreements. However, plaintiff claims that she did not read any of these documents, and Palumbos did not review them with her. At Palumbos' direction, she did not date these forms when she signed them. Palumbos left a copy of the purchase agreement with plaintiff, but took the originals, the disclosure statements, and the subscription agreements with him.

Palumbos met with plaintiff again on April 24, 1990. At this meeting, plaintiff authorized Palumbos to invest the money she had

1. Plaintiff also invested in, *inter alia*, an unknown number of units in Textainer limited partnership for $40,000; 3,906 shares of Oppenheimer Strategic Income fund for $20,000; 1,638 shares of Oppenheimer New York Tax Exempt Fund for $20,000; 1,990 shares of Cigna Government Securities Fund for $20,000; 1,573 shares of Cigna Utilities Fund for $20,000; 2,641 shares of Cigna Income Fund for $20,000; 2,335 shares of Cigna High Yield Fund for $20,000; 1,925 shares of Washington Mutual Investors Fund, Inc. for $30,000; 1,837 shares of Investment Company of America for $30,000; and 1,333 shares of the Growth Fund of America, Inc. for

$30,000. Plaintiff does not challenge the appropriateness of these investments.

2. The benefits consisted of approximately $165,000 from her husband's Eastman Kodak Savings and Investment Plan ("SIP") and individual retirement account ("IRA"), $275,000 from his life insurance policy, $5,000 in checking and savings accounts, and a right to receive monthly payments of $315 from his retirement annuity, which was to commence when he turned 55 years of age.

received from her husband's life insurance policy. Once again, plaintiff signed the required purchase orders, disclosure statements, and subscription agreements, but again failed to read any of the documents. Once again, she did not date the purchase orders. As he did before, Palumbos left a copy of the purchase agreement with plaintiff, but took the other signed documents with him.

Palumbos and plaintiff met again in early June 1990. At this meeting, Palumbos sorted the documentation concerning plaintiff's investments and disposed of the copies of the purchase agreements. After this meeting, plaintiff did not concern herself with her investments until February 7, 1991 when she met with her accountant, who told her that, in his opinion, the investments were unsuitable for her financial and personal situation. Plaintiff subsequently commenced this action on February 4, 1992, and filed an amended complaint on April 30, 1992.

In her amended complaint, plaintiff alleges that Palumbos made fraudulent statements and omissions, and induced her to invest in securities—the five limited partnerships— that were completely unsuitable for her needs because they were too risky, not liquid, and not intended for someone in her situation. Plaintiff contends that there is no public market in which she can sell her partnership units and that she has already lost $3,850 on her investment in the partnerships. She also alleges that Palumbos and the Cigna Companies induced her to invest in the partnerships to generate substantial commissions, contending that defendants earned $8,005 in commissions on her purchase of units in the five partnerships. Plaintiff also alleges that the annuity and insurance policy Palumbos induced her to buy were too expensive and reduced the amount of cash currently available to her. Thus, the claims raised by this action fall essentially into one category—a claim for unsuitability, i.e. that defendants, despite knowing that the five limited partnerships, the annuity, and the life insurance policy were unsuitable investments for plaintiff, still recommended that she invest in them.

## DISCUSSION

### I. *Motion to Dismiss: The Legal Standard.*

Defendants move to dismiss under Rules 12(b)(6) and 9(b), Fed.R.Civ.P. On a motion to dismiss, the trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980); *see Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court should grant a motion to dismiss "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King and Spaulding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

Consideration of a motion to dismiss the complaint must focus on the allegations contained on the face of the complaint. *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991). Moreover, on a motion to dismiss, a district court must accept plaintiff's factual allegations as true, *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986), and the allegations must be "construed favorably to the plaintiff." *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991).

### II. *Statute of Limitations*

The primary issue raised by this motion is whether plaintiff commenced this action within the applicable one-year/three-year limitations period. The amended complaint alleges that plaintiff purchased her units in the five limited partnerships on April 18 and 24, 1990, that she had received the prospectuses on the partnerships before making the investment, and that she signed the disclosure statements and subscription agreements when she signed the purchase agreements. The prospectuses and disclosure statements warn of the risk involved in, and the illiquid

nature of, the investment, and they set out the commission that would be earned on each investment. Yet, plaintiff did not commence this action until February 4, 1992, more than one year after she purchased the securities, and, more than one year after she received the prospectuses and signed the disclosure statements.

Claims brought under section 12(2) of the 1933 Act, section 10(b) of the 1934 Act, and rule 10b–5 are governed by a one-year/three-year limitations period. 15 U.S.C. § 77m (1933 Act);[3] *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991).[4]

Defendants contend that plaintiff's claims are time-barred under the one-year limitations period, because she commenced this action more than one-year after she reasonably could have discovered the alleged fraud. Plaintiff, defendants argue, possessed enough information, and could have, through the exercise of reasonable diligence, discovered the fraud when she received the prospectuses and signed the disclosure statements.

In response, plaintiff contends that because she is a naive and innocent investor, mere receipt of the prospectuses did not cause the limitations period to accrue. "Discovery takes place at different times," she argues, "depending upon the specific nature, sophistication and characteristics of the investor." Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss Amended Complaint ("Plaintiff's Mem.) at 6. In addition, relying principally on *Werner v. Satterlee, Stephens, Burke & Burke,* 797 F.Supp. 1196, 1204 (S.D.N.Y.1992) and *Hauman v. Illinois Power Company,* Fed.Sec.L.Rep. (CCH) ¶ 96,882, at 93,606, 1991 WL 354887 (C.D.Ill. August 29, 1991), plaintiff contends

that an investor is not required to exercise reasonable diligence to uncover fraudulent conduct under section 10(b) and rule 10b–5, because the one-year limitations period prescribed by *Lampf* accrues only upon *actual* discovery of the fraud.

I am not persuaded by plaintiff's arguments. Plaintiff could have, by the exercise of reasonable diligence, discovered the alleged fraud more than one year before she commenced this action. Consequently, her claims under the 1933 Act and the 1934 Act are time-barred under the one-year limitations period.

"The test as to when fraud should with reasonable diligence have been discovered is an objective one." *Armstrong v. McAlpin,* 699 F.2d 79, 88 (2d Cir.1983). " 'Where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him.' " *Id.* (quoting *Higgins v. Crouse,* 147 N.Y. 411, 416, 42 N.E. 6 (1895)); *Arneil v. Ramsey,* 550 F.2d 774, 780 (2d Cir.1977). This is true whether the claim is one under section 12(2) of the 1933 Act, section 10(b) of the 1934 Act, or rule 10b–5. *See Anixter v. Home–Stake Production Co.,* 939 F.2d 1420, 1441–42 (10th Cir.1991) ("Anixter I"), *vacated on other grounds and remanded sub nom. Dennler v. Trippet,* —— U.S. ——, 112 S.Ct. 1658, 118 L.Ed.2d 382 (1992); *accord Mittendorf v. J.R. Williston & Beane Inc.,* 372 F.Supp. 821, 832 (S.D.N.Y. 1974).

■ Thus, the relevant inquiry here is when was plaintiff in possession of sufficient

---

**3.** Section 13 of the 1933 Act, 15 U.S.C. § 77m, provides:

> No action shall be maintained to enforce any liability created under section 77k or 77*l*(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77*l*(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any

such action be brought to enforce a liability created under section 77k or 77*l*(1) of this title more than three years after the security was bona fide offered to the public, or under section 77*l*(2) of this title more than three years after the sale.

**4.** "Litigation instituted pursuant to § 10(b) and rule 10b–5 therefore must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Lampf,* 501 U.S. at ——, 111 S.Ct. at 2782.

information to place her on notice, whether actual notice or inquiry, that she may have been defrauded. *See, e.g. Anixter,* 939 F.2d at 1437 ("Notice is the key to our analysis, and merely 'inquiry notice' will do."); *De-Bruyne v. Equitable Life Assur. Soc. of the U.S.,* 920 F.2d 457, 466 (7th Cir.1990) ("the one year limitations period begins to run even when a plaintiff is placed on 'inquiry notice' of possible misrepresentation"); *Davidson v. Wilson,* 973 F.2d 1391, 1402 (8th Cir.1992) (limitations period begins to run even when plaintiff is only on inquiry notice).

A review of the amended complaint reveals that plaintiff, by the exercise of reasonable diligence, should have been on inquiry notice of the alleged fraud when she received the prospectuses on the five limited partnerships, and signed the subscription agreements and disclosure statements. "Inquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the scam itself." *Kennedy v. Josephthal & Co., Inc.,* 814 F.2d 798, 802 (1st Cir.1987). "[T]he statute runs from the time at which plaintiff should have discovered the general fraudulent scheme." *Arneil,* 550 F.2d at 780 (quoting *Berry Petroleum Co. v. Adams & Peck,* 518 F.2d 402, 410 (2d Cir.1975)). It does not await her "leisurely discovery of the full details of the alleged scheme." *Id.*

■ The offering materials explain much of the information that plaintiff contends Palumbos neglected to tell her; they set out the commissions that would be earned from each investment, Amended Complaint at ¶ 40(H), and the relevant risk factors, suitability requirements, and liquidity of each limited partnership.[5] For example, the TFSI prospectus states on page three that "[i]nvestment in the Partnership is suitable only for investors of adequate financial means who have no need for liquidity with respect to this investment. Palumbos Aff., Ex. A. On page eight, the prospectus warns that "[p]rospective investors should carefully consider the risks that are described below . . . ," *id.* and it later describes the various risks.

Additionally, the PLM prospectus states on its cover that "[t]here is no public market for the units and none is expected to develop." Palumbos Aff., Ex. E. It goes on to warn that "[t]his offering involves certain risk factors and substantial fees to the general partner and affiliates." *Id.*

The remaining prospectuses also warn, to varying degrees, of the risk involved in the investment, the illiquid nature of the investment, and the lack of a public market for the units in the limited partnership.

■ These warnings were sufficient to place an investor of ordinary intelligence, such as plaintiff, on inquiry notice of the alleged fraud. *See Koke v. Stifel, Nicolaus & Co., Inc.,* 620 F.2d 1340, 1343–44 (8th Cir.1980); *Kennedy,* 814 F.2d at 802–03. *But see Luksch v. Latham,* 675 F.Supp. 1198 (N.D.Cal.1987). Plaintiff's claim that she did not read or understand the offering material is unavailing. Plaintiff "cannot avoid the statute of limitations by possessing, but failing to read, the documents that would put [her] on inquiry notice." *DeBruyne,* 920 F.2d at 466 n. 18. A plaintiff is not free to ignore pertinent documents even if she is not able to fully understand their meaning. *Koke,* 620 F.2d at 1343–44 (even if plaintiff thought monthly account statements looked like "hieroglyphics," she was not free to ignore them). An investor is obligated to read the prospectus or other offering material or have someone explain it to her. *See Marlow v. Gold,* Fed.Sec.L.Rep. (CCH) ¶ 96,112, at 90634, 1991 WL 107268 (S.D.N.Y. June 6, 1991). By failing to read the offering material, an investor proceeds at her peril.

Moreover, plaintiff should have been alerted to the possibility of fraud when she signed the disclosure statements. The disclosure statements, in contrast to the long descriptions in the prospectuses, are short one-page outlines of the special risks involved in investing in the partnerships. For example, the TFSI disclosure form states: "I fully

---

5. It is proper to examine such documents, which are integral to the complaint, on a motion to dismiss even if they are not attached as an exhibit to the complaint. *I. Meyer Pincus & Assoc. v. Oppenheimer & Co., Inc.,* 936 F.2d 759, 762 (2d

Cir.1991); *Kramer,* 937 F.2d at 773–74. The relevant documents are attached as exhibits to the Affidavit of Martin Palumbos ("Palumbos Aff."), and will be referenced accordingly.

understand the illiquid nature of an investment in Secured Investors III [TFSI]. I recognize the risks that such illiquidity entails ..." The Krupp disclosure statement contains this disclaimer: "I fully understand the illiquid nature of an investment in KRUPP CASH PLUS–V and that no secondary market is likely to exist for limited partnership units." Palumbos Aff., Ex. D. The PLM disclosure form contains a similar disclaimer, and notes that "[t]his document only supplements, and in no way replaces the prospectus; investors should review the prospectus closely in order to determine the appropriateness of this investment." *Id.*, Ex. F. It also states that the "program involves special risks in terms of valuation and liquidity for the qualified and IRA plan investor." *Id.* The Berry & Boyle disclosure form contains similar warnings.

▆▆▆ These documents indicate clearly that the limited partnerships were not liquid and entailed risks, claims plaintiff now raises. Therefore, when plaintiff signed these documents it triggered a duty of inquiry on her part. *See Topalian v. Ehrman*, 954 F.2d 1125, 1132–34 (5th Cir.) (signing of subscription agreement triggered reason to exercise due diligence), *cert. denied*, — U.S. —, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The amended complaint contains no allegation that defendants attempted to conceal the essential facts from plaintiff. On the contrary, the complaint expresses clearly that defendants gave plaintiff all the information necessary for her to make an informed decision, but that plaintiff failed to peruse the information because she could not understand it. This case is, therefore, distinguishable from *McCoy v. Goldberg*, 748 F.Supp. 146 (S.D.N.Y.1990),[6] a case on which plaintiff relies. Plaintiff attempts to escape the requirement that she exercise reasonable diligence by contending that the Supreme Court's decision in *Lampf* eliminated the objective reasonable diligence standard and substituted in its place a requirement of actual discovery in section 10(b) actions. Plaintiff relies on the Court's statement that "[t]he 1–year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary," *Lampf*, 501 U.S. at —, 111 S.Ct. at 2782, and the footnote that states that the governing standard for an action under § 10(b) will be the language of § 9(e) of the 1934 Act, 15 U.S.C. § 78i(e). *Id.* n. 9.

I disagree with plaintiff's interpretation of *Lampf*. Courts have long interpreted the term "discovery" to include a requirement of diligence by the defrauded party. For example, the Fifth Circuit, in interpreting the term "discovery" in the statute of limitations provided for in section 29 of the 1934 Act,[7] held that:

'Discovery' within the meaning of the statute, 15 U.S.C.A. § 78cc(b), quoted in footnote 2, supra, is to be determined we think, according to an objective standard; that is, 'discovery' means either actual knowledge or notice of facts which, in the exercise of due diligence, would have led to actual knowledge of the violation.

*Goldenberg v. Bach and Company*, 270 F.2d 675, 681 (5th Cir.1959) (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946)). The obligation to exercise reasonable diligence is also an essential element of the discovery rule,[8] and is the basis for the objective approach to deciding when the statute of limitation in a securities fraud action accrues. *See Holmberg*, 327 U.S. at 397, 66 S.Ct. at 585 (reasonable dili-

---

6. In *McCoy*, the court held that plaintiff, a naive investor, would not be held to have been on constructive notice of the contents of the prospectus, because defendants induced her to ignore the prospectuses.

7. Section 29(b) provided in relevant part:
   [U]nless such action is brought within one year after the discovery that such sale or purchase involves such violation and within three years after such violation.
   15 U.S.C. § 78cc(b).

8. The discovery rule provides essentially that "where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.'" *Holmberg*, 327 U.S. at 397, 66 S.Ct. at 585 (quoting *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1874)).

gence standard); *Goldenberg,* 270 F.2d at 681 (discovery is to be determined by an objective standard); *Mittendorf,* 372 F.Supp. at 832 (the objective approach has been uniformly applied by Courts in actions brought under both the 1933 and 1934 Securities Acts).

The Court's holding in *Lampf* did not alter this requirement of reasonable diligence. In establishing a uniform statute of limitations the Court stated only that the one-year limitations period begins to run "after discovery of the facts constituting the violation." It did not eliminate the long-standing requirement that a plaintiff exercise reasonable diligence to uncover the fraud. *Anixter v. Home-Stake Production Co.,* 947 F.2d 897, 899 (10th Cir.1991) ("Anixter II"), *vacated on other grounds and remanded sub nom., Dennler v. Trippet,* —— U.S. ——, 112 S.Ct. 1658, 118 L.Ed.2d 382 (1992). *But see Werner,* 797 F.Supp. at 1204; *Hauman,* Fed.Sec. L.Rep. ¶ 96,882 at 93,606.

> When the Court selected § 9(e), it did not necessarily indicate a preference for the type of notice of the violation but sought a 'governing' standard to link the implied § 10(b) remedy to those express securities causes of action which uniformly require one year after notice of the violation and not more than three years after the violation.

*Anixter,* 947 F.2d at 899 (footnote omitted). Absent a clear indication from the Court that section 10(b) and rule 10b–5 cases are now to be governed by an actual discovery standard, I find that section 10(b) plaintiffs are still required to exercise reasonable diligence to uncover the fraud, and that a failure to do so will result in imputing to them the information that the exercise of reasonable diligence would have uncovered.

Additionally, the Second Circuit's recent interpretation in *Henley v. Slone,* 961 F.2d 23, 24 (2d Cir.1992) of the uniform statute of limitations it adopted in *Ceres Partners v. GEL Associates,* 918 F.2d 349 (2d Cir.1990) suggests strongly that the Second Circuit would interpret section 9(e) of the 1934 Act to include a reasonable diligence standard. In *Lampf,* the Supreme Court stated that the language of section 9(e) of the 1934 Act

would provide the governing standard for actions under section 10(b). —— U.S. at —— n. 9, 111 S.Ct. at 2782 n. 9. In *Ceres,* the Second Circuit relied, in part, on section 9(e) in its decision to adopt the one-year/three-year limitations period. Recently, in *Henley,* the Second Circuit noted that in *Ceres* "we announced a uniform limitations period of the earlier of one year from the date the fraud was or *reasonably would have been discovered* or three years from the date of the transaction ...". *Henley,* 961 F.2d at 24 (emphasis added). Thus, read together *Henley* and *Ceres* suggest strongly that the Second Circuit has interpreted section 9(e) of the 1934 Act to include a reasonable diligence requirement. *Cf. In re: General Development Corp. Bond Lit.,* 800 F.Supp. 1128, 1135 (S.D.N.Y. 1992) (under the *Henley* court's recapitulation of the *Ceres* rule, courts must consider in section 10(b) actions whether plaintiff should have been alerted to fraud upon receipt of prospectus and other documents).

For the reasons discussed above, I find that plaintiff's federal securities claims under the 1933 and 1934 Acts, which were filed more than one and a half years after plaintiff could have, by the exercise of reasonable diligence, discovered the alleged fraud, are untimely. Although questions of due diligence and constructive knowledge often turn on resolving the disputed facts of a particular case, *Robertson v. Seidman & Seidman,* 609 F.2d 583, 591 (2d Cir.1979), this action falls within the small category of cases in which it can be said that plaintiff, as a matter of law, should have discovered the alleged fraud more than one year before she commenced the action. *See Davidson,* 973 F.2d at 1401–02. Accordingly, plaintiff's claims under section 12(2) of the 1933 Act, section 10(b) of the 1934 Act, and rule 10b–5—counts one and three—are dismissed under Rule 12(b)(6), Fed.R.Civ.P., as time-barred under the one-year limitations period.

In addition, plaintiff's claims alleging control person, and aider and abettor liability—counts two and four—are also dismissed as time-barred. *See Herm v. Stafford,* 663 F.2d 669, 679 (6th Cir.1981) (claims alleging control person liability are governed by same limitations period as primary claims of secu-

rities fraud); *Schwartz v. Michaels,* No. 91–3538, 1992 WL 184527 *16, 1992 U.S.Dist. LEXIS 11321 *52 (S.D.N.Y. July 23, 1992) (limitations period for aiding and abetting liability under section 10(b) is the same as that for primary violation).

### III. *The Pendent State Claims*

Jurisdiction over plaintiff's state law claims for breach of fiduciary duty, common law fraud, negligent misrepresentation, and violation of § 349 of the General Business Law of the State of New York are all based solely on pendent jurisdiction; there is no independent source of federal jurisdiction. Because all of the federal claims have been dismissed, I decline to retain jurisdiction over the state law claims. Accordingly, Counts five through eleven are dismissed, without prejudice, for lack of subject matter jurisdiction.

### IV. *Leave to Replead*

Plaintiff has moved for leave to file a second amended complaint if her amended complaint is dismissed. Because plaintiff's federal securities law claims are dismissed as time-barred, and her state law claims are dismissed without prejudice, there is no basis to allow plaintiff to replead. Amendment of the complaint will not cure its defects. Consequently, plaintiff's motion is denied.

### CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the amended complaint is granted, and the complaint is dismissed. Plaintiff's motion to amend the complaint is denied.

IT IS SO ORDERED.