Joseph A. GANINO, et al., Plaintiffs,

v.

CITIZENS UTILITIES COMPANY, et al., Defendants.

No. 3:98CV00480 (WWE).

United States District Court, D. Connecticut.

·June 28, 1999.

## RULING ON MOTION TO DISMISS
### INTRODUCTION

EGINTON, Senior District Judge.

This is a class action lawsuit brought pursuant to Rule 10b–5 of the Securities Act of 1934, in which plaintiffs allege that defendant Citizens Utilities ("Citizens") violated the federal securities laws by failing to adequately disclose its relationship with, and revenues derived from, an allegedly related party, Hungarian Telephone and Cable Corporation ("HTCC").

Under the authority provided by Section 10(b) of the 1934 Securities and Exchange Act, the Securities and Exchange Commission ("Commission") promulgated Rule 10b–5, which makes it unlawful to misrepresent or omit material information in connection with the purchase and sale of securities. 17 C.F.R. § 240.10b–5. To state a cause of action under Section 10(b) and Rule 10b–5, the plaintiffs must allege that in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material misrepresentation or omitted to disclose material information and that plaintiffs' reliance on the defendants's action caused them injury. *See In re Time Warner, Inc. Sec. Lit.*, 9 F.3d 259, 264 (2d Cir.1993). Violations of 10b–5 form the basis for the First Count of the class action amended complaint.

The Second Claim is brought against individual corporate officers as controlling

parties of Citizens and alleges violation of Section 20(a) of the Securities Act, based on such control.

All defendants have moved to dismiss the second amended complaint.

## STATEMENT OF FACTS

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and the decision rendered on, this Motion. These relevant facts are distilled from plaintiffs' second amended complaint, the parties' moving papers and affidavits filed therewith.

Citizens is a Delaware corporation with its principal place of business in Stamford, Connecticut. Citizens is a diversified communications and public services company that provides telecommunications, gas and electric distribution, natural gas transmission and distribution, water distribution, and waste water treatment services to customers in twenty-two states. The individual defendants were officers and directors of Citizens at the time alleged in the second amended complaint.

HTCC is a provider of basic telephone services in certain regions within the Republic of Hungary. HTCC is permitted to operate exclusively within certain regions pursuant to concessions and access lines it obtained from the relevant Hungarian governmental agency.

In order to obtain the funds required to pay necessary construction costs and to meet other financial obligations, HTCC entered into financing agreements with a wholly owned subsidiary of Citizens.

On May 18, 1995—approximately nine months before the time periods alleged in the second amended complaint—defendant Citizens issued a press release announcing that it had entered into a contractual relationship under which it would provide management services to HTCC and would attain rights to acquire a controlling interest in HTCC.

On June 6, 1995, Citizens publicly filed the Management Services Agreement with the SEC.

On August 14, 1995, Citizens filed its June 30, 1995, Form 10–Q report with the SEC, which filing again fully disclosed its new arrangement with HTCC and the details thereof. The filing also disclosed that on July 25, 1995, Citizens made a secured loan to HTCC in the amount of $1,887,000. All accounting for Citizens was done by their auditors in compliance with GAAP during these critical time frames.

On March 26, 1996, Citizens filed its 1995 10–K report with the SEC in which it stated that Citizens agreed to provide up to $33,200,000 of interim financing to HTCC. In consideration of such financial support granted to HTCC, additional shares of its common stock increased Citizens' ownership of HTCC to 14%.

On March 6, 1996, Citizens filed its Form 10–K with the SEC in which it disclosed that, pursuant to the Agreements between Citizens and HTCC, Citizens had the right to purchase up to 54% of HTCC stock; provide certain management services on a cost-plus basis; and have one member of the HTCC board. The filing also included the fact that Citizens had provided HTCC with management and financial support. The filing went on to state that Citizens had been compensated for such financial support and guarantees and that Citizens' investment in HTCC was calculated by using the cost method of accounting, under GAAP.

On May 14, 1996, Citizens' Form 10–Q disclosed that the company's revenues for the first quarter, 1996 were $329.1 million. Although defendants assert that the amount of plaintiffs' alleged non-disclosure amounts to $6.9 million, or approximately 2% of Citizens' revenues, plaintiffs' allege that this statement was inaccurate by 15.78% because Citizens used GAAP principles, rather than Equity Accounting.[1]

---

1. Equity Accounting compares HTCC's **gross**   pre-tax revenues to Citizens' net after-tax rev-

On August 15, 1996, defendants issued a press release and filed its 10–Q with the SEC announcing financial results for the second quarter ended June 30, 1996. The total revenues in these documents were $318.1 million. Again using Equity Accounting rather than GAAP, the plaintiffs' complaints of non-disclosure regarding HTCC during this time period represented 6.9% of Citizens' second quarter revenues. Pursuant to GAAP principles, the alleged nondisclosure represented 1% of Citizen's income.

On November 13, 1996, Citizens announced third quarter and year to date financial results in its filing of its Form 10–Q, disclosing that the company's total revenues for the third quarter, 1996, were $320 million. The allegations of the second amendment complaint regarding this time frame assert understatement by 7.2% of Citizen's net worth.

On March 16 and 17, 1996, Citizens issued a press release and filed a Form 10–K, announcing fourth quarter and year end results. It is undisputed that the Form 10–K reported total revenues for the year of $1.3 billion. With no explanation, plaintiffs allege that the reported income was $178.7 million. Thus, the HTCC loan represented 5.7% of overall earnings. According to Citizens and their auditors, the alleged nondisclosure of the $22,000,000 lent to HTCC as a non-recurring source of revenue, represented $1.7% of Citizens' revenues.

Finally, plaintiffs allege that on or about August 7, 1997, defendants filed a Form 10–Q for the quarter ended June 30, 1997 which "[f]inally" disclosed the alleged truth about HTCC, and ends the class period.

There was no movement in the price of Citizens stock following the August 7 announcement about HTCC.

enues. Each of the percentages set forth by plaintiffs use this accounting principle. The Court finds, however, that this approach is economically unsound and fails to take into

## LEGAL ANALYSIS

### I. *The Standard of Review*

#### A. Federal Rule of Procedure 12(b)(6)

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59, (1984). The function of a motion to dismiss is "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984) *quoting Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980).

Pursuant to a Rule 12(b)(6) analysis, the Court takes all well-pleaded allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff. *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996). *See also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), (Federal Rules reject approach that pleading is a game of skill in which one misstep by counsel may be decisive of case).

In evaluating a motion to dismiss under 12(b)(6), a court may go outside the complaint and consider a wide range of material. *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989) (trial court may deem the complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated by reference). *See also, In I. Meyer Pincus and Assoc., .P.C. v. Oppenheimer & Co., Inc.,* 936 F.2d 759, 762 (2d Cir.1991) (trial court may consider a prospectus upon which the plaintiff solely relies and is integral to the complaint, even if the plaintiff neither attaches the prospectus to the complaint nor incorporates it by reference); *Kramer v.*

account generally accepted accounting principles. As defendants have noted, such reasoning is to compare apples with oranges.

*Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991) (trial court reviewing the sufficiency of allegations in a securities fraud action may review public disclosure documents required by law to be filed with the Securities and Exchange Commission, especially if plaintiff has been given notice by proffer of documents).

■ In light of this line of cases, the Court refers to Citizens' public filings, HTCC's public filings and the full text of documents that are integral to plaintiffs' claims. To the extent that the written documents contradict the allegations in the second amended complaint, the former control. *Ferber v. Travelers Corp.*, 802 F.Supp. 698, 702 (D.Conn.1992).

■ In such an instance, this reliance does not turn a motion to dismiss into a motion for summary judgment. *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991), *cert. denied sub nom Cortec Industries v. Westinghouse Credit Corp.*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992).

## II. *The Standard As Applied*

■ Under Section 10(b), information is "material" only if its disclosure would alter the "total mix" of facts available to an investor and "if there is a substantial likelihood that a reasonable shareholder would consider it important" to the investment decision. *Basic v. Levinson*, 485 U.S. 224, 231–32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), *quoting TSC Industries, Inc. v. Northway*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).

The materiality of a given fact cannot be determined in a vacuum but must be measured against the total mix of public information. "It is not enough that a statement is false or incomplete, if the misrepresented fact is otherwise insignificant." *Basic*, 485 U.S. at 238, 108 S.Ct. 978.

■ Further, if the fact is of de minimis import it is immaterial as a matter of law and need not be disclosed. Courts, and economic analysts, have often used a ratio of the omitted fact to that disclosed by looking to the overall percentages of the financial information available. "Most auditors—and their corporate clients—define materiality as any event or news that might affect a company's earnings, positively or negatively, by 3% to 10%.... [it] has become standard practice in corporate America. Thus, if a particular charge or event doesn't meet the 3% to 10% level, companies feel they don't have to disclose it." Wall Street Journal, *SEC Readies New Rules for Companies About What Is 'Material' for Disclosure* (November 3, 1998) (Exhibit A to Declaration of Jeffrey S. Nobel in Opposition to Defendants' Motion to Dismiss).

In *Ferber v. Travelers Corp.*, 802 F.Supp. 698 (D.Conn.1992) the court dismissed a Rule 10b–5 complaint for failure to satisfy the materiality requirement by performing such a percentage analysis. In Ferber, the complaint alleged, *inter alios*, that:

(i) Travelers failed to disclose that it was holding $585 million of highly risky second mortgages on commercial properties; (ii) this omission materially misrepresented Travelers' financial condition; and (iii) Travelers' accounting for these investments violated GAAP. *Id.* at 703–04. Judge Nevas dismissed these allegations without leave to replead on the grounds of lack of materiality because the amount was insignificant compared to the company's total assets:

Standing alone, Travelers' failure to disclose the extent of second mortgages does not constitute a material omission. Travelers disclosed that it was holding $528 in second mortgages for the first time in its 1990 annual report. Yet, these second mortgages were part of a total mortgage-loan and real estate portfolio of $167,129 billion. Moreover, Travelers reported a total investment portfolio of $33,237 billion and a total asset portfolio of $55,356 billion ...Thus, Travelers' second mortgages

constituted approximately one percent of its assets and three percent of its ... real estate portfolio. In view of the entirety of information disclosed by Travelers, the plaintiffs have failed to allege particularized facts from which the court can infer that the failure to disclose $585 million in second mortgages was a material omission.

*Id.* at 708.

In *Parnes v. Gateway 2000 Inc.*, 122 F.3d 539, 547 (8th Cir.1997) the Court of Appeals affirmed a motion to dismiss without leave to replead. The court agreed with the district court that an overstatement of assets by 2% of defendants' overall net worth was not material as a matter of law. "It seems that a reasonable investor ... would not have been put off by an asset column that was 2% smaller."

Similarly, in *In re Computervision Corp. Securities Litigation*, 914 F.Supp. 717 (D.Mass.1996), the district court granted a motion to dismiss for failure to state a claim and denied leave to replead as futile. The First Circuit Court of Appeals affirmed the district court, noting that an amendment would be futile, since the omitted information was 3% to 9% of actual revenues and therefore immaterial for purposes of Rule 10b–5. *Glassman v. Computervision Corp.*, 90 F.3d 617, 633 (1st Cir.1996). *See also Shuster v. Symmetricon, Inc.*, 1997 WL 269490 at *8 (N.D.Cal. Feb. 25, 1997) (where alleged fraudulent transaction represented only 2% of defendant's quarter revenue, the amount is "is not material as a matter of law").

The Court finds these precedents persuasive and holds that the amount in issue here—1.7% of Citizens' revenues for the relevant time period, pursuant to GAAP—is immaterial as a matter of law.

Another indication of materiality is the market's response to the alleged misinformation. *See Bromberg & Lowenfels, Bromberg and Lowenfels on Securities Fraud and Commodities Fraud*, § 7.4(450) (nonreaction to information indication that it is not material). In the present case, the Court has examined the August 7, 1997 announcement, in which plaintiffs allege that defendants belatedly disclosed the decrease in revenues from HTCC. As the NYSE trading information reveals, there was no movement in the Citizens stock following the announcement and within days thereafter, the price of the stock increased. This impact on the market is significant evidence that the lack of information complained of by plaintiffs was not material as a matter of law.

Since plaintiffs cannot surmount the element of materiality, the Court need not examine the remaining elements of plaintiffs' securities fraud action. Nevertheless, the Court has thoroughly examined those elements and plaintiffs' supporting authority, and holds that such would not change the outcome of this case. Plaintiffs have not pled any cause of action upon which relief may be granted. The Motion to Dismiss [Doc. No. 28] is hereby GRANTED. Plaintiffs are denied the right to amend their complaint a fourth time, as the Court finds such would be futile within the meaning of Federal Rule of Civil Procedure 15. The Clerk is directed to close this case and enter judgment for defendants.

SO ORDERED