**Eben W. HASKELL, Plaintiff,**

v.

**TIME, INC. and Time Warner, Inc., Defendants.**

**Eben W. HASKELL, Plaintiff,**

v.

**PUBLISHERS CLEARING HOUSE, Defendant.**

**Eben W. HASKELL, Plaintiff,**

v.

**The READER'S DIGEST ASSOC., INC., Defendant.**

**Eben W. HASKELL, Plaintiff,**

v.

**AMERICAN FAMILY PUBLISHERS, Defendant.**

**Nos. Civ–S–93–1165 DFL GGH through Civ–S–93–1167 DFL GGH and Civ–S–93–1313 DFL GGH.**

United States District Court, E.D. California.

June 13, 1994.

Harold A. Berliner, Richard Ellers, Nevada City, CA, for Haskell.

Jeffrey N. Brown, Laura A. Vossman, Morgan, Lewis & Bockius, Los Angeles, CA, for Publishers Clearing House.

William I. Edlund, Emmett C. Stanton, Melanie A. Sherk, San Francisco, CA, for The Reader's Digest Assoc., Inc.

Douglas E. Mirell, Loeb & Loeb, Los Angeles, CA, for American Family Publishers.

*MEMORANDUM OF DECISION
AND ORDER*

LEVI, District Judge.

Plaintiff seeks to enjoin various of the statements made by defendants in their widely distributed magazine sweepstakes solicitations. Plaintiff Eben Haskell brings suit on behalf of himself and the general public of California against defendants Time Warner, Inc. ("Time Warner"), Time, Inc. ("Time"), Publishers Clearing House ("PCH"), The Reader's Digest Association, Inc. ("RDA"), and American Family Publishers ("American").[1] All defendants except Time Warner solicit magazine subscriptions through the mail.[2] To enlist subscribers, defendants include "sweepstakes" entries with their subscription advertisements. In four separate complaints, Haskell asserts that each defendant's mailings amount to (1) false and misleading advertising in violation of Cal.Bus. & Prof.Code § 17500; (2) unfair business practices in violation of Cal.Bus. & Prof.Code §§ 17200 & 17204[3]; (3) illegal sweepstakes in violation of California's contest regulations at Cal.Bus. & Prof.Code § 17539.3(f); and (4) illegal lotteries in violation of Cal.Penal Code §§ 319–328 and Cal. Bus. & Prof.Code §§ 17204 and 17535. Plaintiff seeks injunctive relief enjoining future conduct, appointment of a receiver to restore monies paid by California residents for magazine subscriptions as a result of defendants' sweepstakes promotions, and attorney's fees. Jurisdiction is premised upon diversity.

As to the false advertising and unfair competition claims, plaintiff identifies certain allegedly misleading statements in each of the complaints and contends that these statements create a number of false impressions:

(1) that the recipient has already been selected as the winner or has an excellent chance of winning when neither proposition is true; (2) that the prize will be awarded as a lump sum when in fact it is a payout over 30 years from which taxes must be paid; (3) that if merchandise is ordered with the return of the notification, the chances of winning will be improved when this is not the case; and (4) that the notification must be returned promptly, creating a false sense of urgency, when numerous future opportunities to participate in the same sweepstakes will be provided.[4] Each of the complaints specifically lists and quotes in some detail the defendant's false statements that contribute to these four misimpressions. A summary of these statements is attached as appendices A–D. Defendants contend that the alleged misstatements are pulled out of context and are not misleading when read in context or amount to harmless puffing of no significance to any reasonable recipient.

Plaintiff also claims that the sweepstakes are contests within section 17539.3(f), and that they fail to comply particularly with the statutory disclosure requirements for contests. In the alternative, plaintiff claims that the sweepstakes are illegal lotteries in violation of the Cal.Penal Code §§ 319–328 because they give the impression that those who order magazines will be favored and in fact do favor those who place orders. Finally, plaintiff contends that the "skill contests" conducted by defendants RDA and PCH are illegal lotteries because they are only open to addressees who order and because they do not require any "skill." Defendants contend that the Penal Code provisions cannot be enforced in a private civil suit; that the sweepstakes do not meet the definition of

---

**1.** Haskell originally brought suit against all defendants jointly in Case No. Civ–S–93–515. This court ordered the severance of claims against each defendant in its June 30, 1993 order.

**2.** Time Warner, Inc. is joined as the parent corporation of Time, Inc. although Time Warner does not engage in any direct advertising through sweepstakes mailings.

**3.** The unfair business practice claim is based on the same conduct alleged in the false and misleading advertising claim.

**4.** There is an overlap between the alleged misimpression as to urgency and the alleged misimpression concerning the recipient's chances of winning. Plaintiff alleges that recipients are led to believe that their chances have been improved because they have been particularly selected and have made it into a smaller group of so-called "finalists." The supposed urgency stems from the importance that the recipient not forego this special opportunity.

lottery in any event because of the absence of consideration; and that the RDA and PCH "skill contests" are not lotteries because they require both skill and consideration.

Defendants bring motions to dismiss all causes of action for failure to state claims on which relief may be granted. Defendant Time also moves to dismiss Time Warner as an improperly joined defendant. For the reasons stated below, defendants' motions to dismiss Haskell's claims are granted in major part without prejudice.

## I. *False Advertising and Unfair Business Practice Claims*

### A. *Defendants' Exemplars*

■ A preliminary issue arises as to whether the exemplars of the sweepstakes solicitations, submitted by defendants with their motions, properly may be considered on a motion to dismiss. Ordinarily, a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is addressed to the four corners of the complaint without consideration of other documents or facts outside of the complaint.[5] Although each of the complaints at issue contains numerous quotations from each of the defendant's sweepstakes mailers, plaintiff has not attached any examples of the particular mailers under consideration as exhibits to the complaints. Defendants seek to argue that the statements attacked by plaintiff, when viewed in context of the entire mailing, are either not misleading or are non-actionable puffery. They contend that such an argument is proper on a motion to dismiss and need not wait for summary judgment. *See Cook, Perkiss & Liehe v. Northern Cal. Collection Serv., Inc.,* 911 F.2d 242 (9th Cir. 1990). And they argue that it is unfair to defendants that they should be disabled from making a motion to dismiss, based on the context of the statements at issue, simply because plaintiff has chosen not to attach exemplars to his complaints. Defendants ask the court to consider exemplars of the mailings on this motion to dismiss without converting the motion to a summary judgment motion under Fed.R.Civ.P. 56.[6]

■ Under Fed.R.Civ.P. 10(c), the complaint is deemed to include any documents attached to it as exhibits as well as any documents incorporated into the complaint by reference. If the court chooses to look to other documents, such as those attached by a defendant to its motion to dismiss, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). This rule is mandatory. *See Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972).

Defendants argue that there is an exception to the general rule barring consideration of documents outside the complaint in cases in which specific documents lie at the heart of a complaint but are not attached to the complaint. In these circumstances, defendants suggest, the court fairly may consider the documents as incorporated by reference into the complaint without violating the rule that motions to dismiss should be resolved without reference to materials extrinsic to the complaint.

---

5. In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hospital Trustees,* 425 U.S. 738, 740, 96 S.Ct. 1848, 1850–51, 48 L.Ed.2d 338 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 *reh'g denied,* 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969). A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984), *citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see also Palmer v. Roosevelt Lake Log Owners Ass'n,* 651 F.2d 1289, 1294 (9th Cir.1981).

6. Both the defendants and the plaintiff have stated that they do not wish this motion to be treated as one for summary judgment. ("[A]ll parties to this motion agree that this is *not* a motion for summary judgment and should not be treated as one." (Pl.'s Mem.Opp.Mot. Dismiss at 4.))

Defendants rely particularly on securities cases in which consideration of documents integral to the complaint has been held proper on a motion to dismiss even though the documents were not attached to the complaint. Thus, in *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir.1991), the court found that it was permissible to take judicial notice of publicly filed disclosure documents and to consider such documents on a motion to dismiss.[7] The rule in *Kramer* for publicly filed documents was broadened in *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759 (2d Cir.1991), to include documents, whether or not publicly filed, that are central to the complaint and on which plaintiff has relied in drafting the complaint. The court in *I. Meyer Pincus* reasoned that a plaintiff who pleads misrepresentations in a particular document ought not be permitted to defeat a motion to dismiss through the artifice of not attaching the critical document to the complaint.[8] In these circumstances the rationale for converting a motion to dismiss into one for summary judgment—that plaintiff must have sufficient notice—"is largely dissipated" because the plaintiff had ample notice of a critical document on which the complaint is based. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991); *see Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993) (on 12(b)(6) motion, proper to consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit").

This exception to the general rule is not unique to the Second Circuit, *see Townsend v. Columbia Operations*, 667 F.2d 844, 848–49 (9th Cir.1982) (suggesting that in securities case four documents containing alleged misrepresentations, although not literally incorporated within the complaint, may be considered on a motion to dismiss); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993) ("courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint"); *In re Wade*, 969 F.2d 241, 249 & n. 12 (7th Cir.1992), nor to securities cases, *see Fudge v. Penthouse International, Ltd.*, 840 F.2d 1012, 1015 (1st Cir.1988) (libel); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1327 (2d ed. 1990).

Plaintiff does not challenge the authenticity of the exemplars submitted by each defendant, and the exemplars indeed contain the language specifically attacked by plaintiff in the complaint. Plaintiff does not deny that the exemplars, or virtually identical other mailings, are in his possession, are central to his claim, and are referred to in detail in the complaint. Rather, he argues that the exemplars are not the exact or only mailings on which he bases his claims and that they were handpicked by the defendants to succeed on their motions to dismiss. He suggests that he may have exemplars in which the challenged statements appear in a more misleading context or that such examples may turn up through discovery. But plaintiff does not provide any basis in fact for these conclusory

---

7. "[I]t is highly impractical and inconsistent with Fed.R.Evid. 201 to preclude a district court from considering [public disclosure documents] when faced with a motion to dismiss a securities action based on allegations of material misrepresentations or omissions. First, the documents are required by law to be filed with the SEC, and no serious question as to their authenticity can exist. Second, the documents are the very documents that are alleged to contain the various misrepresentations or omissions and are relevant not to prove the truth of their contents but only to determine what the documents stated. Third, a plaintiff whose complaint alleges that such documents are legally deficient can hardly show prejudice resulting from a court's studying of the documents. Were courts to refrain from considering such documents, complaints that quoted only selected and misleading portions of such

documents could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure." 937 F.2d at 774.

8. "The prospectus is integral to the complaint. The claims pleaded therein are based *only* on an alleged written misrepresentation appearing within the prospectus; plaintiff alleges no misrepresentations stemming from any other source, such as words, conduct, or other documentation. We therefore decline to close our eyes to the contents of the prospectus and to create a rule permitting a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the prospectus to the complaint or to incorporate it by reference." 936 F.2d at 762 (citing *Kramer* ).

assertions. He certainly had exemplars either identical or very similar to the ones provided by defendants when drafting the complaints. He has been on notice for some time—at least since the first status conference—that defendants intended to make this motion to dismiss based on exemplars. And he has provided no competing examples in which the context of the alleged misrepresentations is different from the exemplars. His hope that discovery will somehow turn up favorable examples is not sufficient to deprive defendants of their opportunity to avoid the burdens of discovery through a motion to dismiss.

In light of the circumstances here, the exemplars provided by defendants may be considered as if incorporated by reference into the complaints under Rule 10(c).[9] A ruling to the contrary would permit a plaintiff in a case such as this, involving allegedly misleading statements, to deprive the defendant of the opportunity to make a motion to dismiss based on the context of the particular statements on the bare claim that there may be more damaging contexts. This would be inconsistent with case law that permits the court to decide as a matter of law whether allegedly misleading statements amount to mere "puffery" or are factual claims on which a reasonable consumer could rely. *See Cook, Perkiss & Liehe v. Northern Cal. Collection Serv., Inc.,* 911 F.2d 242, 245 (9th Cir.1990); *In re All Terrain Vehicle Litig.,* 771 F.Supp. 1057, 1060–61 (C.D.Cal.1991). *Cf. In re VeriFone Sec. Litig.,* 11 F.3d 865 (9th Cir.1993) (district court properly dismisses securities claims on basis that the statements at issue are not material); *Raab v. General Physics Corp.,* 4 F.3d 286 (4th Cir.1993) (on motion to dismiss court finds that no reasonable investor would rely on certain of the allegedly false statements).

B. *Reasonable Person or Unwary Consumer*

■ The parties disagree as to whether the "reasonable consumer" is the appropriate standard by which to test a claim of false or misleading advertising in violation of § 17200. Plaintiff argues that the "unwary consumer" is the appropriate legal standard for determining deceptiveness. Defendants contend that the "reasonable person" standard should be applied because this is the common standard in the law and because it is the standard used by the Federal Trade Commission in interpreting section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), on which the California Unfair Business Practices Act is based.

Defendants have the better of this argument for a number of reasons. First, the reasonable person standard is well ensconced in the law in a variety of legal contexts in which a claim of deception is brought. It is the standard for false advertising and unfair competition under the Lanham Act, *see Cook, Perkiss & Liehe, Inc., supra,* 911 F.2d at 246; *Saxony Products, Inc. v. Guerlain, Inc.,* 513 F.2d 716, 723 (9th Cir.1975), for securities fraud, *VeriFone, supra,* 11 F.3d at 869 ("our central inquiry is whether a reasonable investor would have been misled about the nature of his investment"), for deceit and misrepresentation, *Kruse v. Bank of America,* 202 Cal.App.3d 38, 248 Cal.Rptr. 217, 226 (1988) ("guileless action in relying on a statement on which no reasonable person would rely is not justifiable reliance"); *Lynch v. Cook,* 148 Cal.App.3d 1072, 196 Cal.Rptr. 544 (1983), and for common law unfair competition, *Sunset House Distrib. Corp. v. Coffee Dan's, Inc.,* 240 Cal.App.2d 748, 50 Cal.Rptr. 49, 54 (1966) ("unfair competition rests on a confusion ... on the part of the public as a whole, acting as reasonable persons"). This list no doubt could be much expanded. Section 17500 of the Business and Professions Code, on which plaintiff proceeds, in no way expressly departs from the "reasonable person" standard so well rooted in the law. In the absence of language indicating that the statute does depart, the court will not infer such a departure in a case involving mass mailings to a large portion of the public.

---

**9.** Plaintiff asserts that he relies not only on the mailings but also on television advertising in making his claims of false advertising and unfair business practice. But the allegedly false television advertising is not identified in the complaints in violation of Fed.R.Civ.P. 9(b). Since the court grants leave to amend the complaints, if indeed there are specific allegations to be made concerning television advertising, plaintiff may include them in the amended complaints.

Indeed, by explicitly imposing a "reasonable care" standard on advertisers, § 17500 impliedly adopts such a standard for consumers as well: unless particularly gullible consumers are targeted, a reasonable person may expect others to behave reasonably as well. *See Ford Dealers Ass'n v. Department of Motor Vehicles*, 32 Cal.3d 347, 185 Cal.Rptr. 453, 466, 650 P.2d 328, 341 (1982) (society must conform to reasonable person standard and advertiser must conform to abilities of the average reader).[10]

It bears emphasis that the complaints in this case allege that defendants' mailings are sent to millions of California residents and not to a group of "particularly susceptible and naive" consumers, such as preschool children. *See Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 197 Cal.Rptr. 783, 793, 673 P.2d 660, 670 (1983). In such a situation a reasonable advertiser could be held to a different standard.

Second, the Unfair Business Practices Act is one "of the so-called 'little FTC Acts' of the 1930's, enacted by many states in the wake of amendments to the Federal Trade Commission Act enlarging the commission's regulatory jurisdiction to include unfair business practices that harmed, not merely the interest of business competitors, but of the general public as well." *Rubin v. Green*, 4 Cal.4th 1187, 17 Cal.Rptr.2d 828, 836, 847 P.2d 1044, 1052 (1993). *See Bank of the West v. Superior Court*, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 544, 833 P.2d 545, 551 (1992). Because of this relationship between the Unfair Business Practices Act and the Federal Trade Commission Act, judicial interpretations of the federal act have persuasive force. *See Mangini v. R.J. Reynolds Tobacco Co.*, 22 Cal.App.4th 628, 21 Cal.Rptr.2d 232, 240–41 (1993); *People ex rel. Mosk v. National Research Co. of Cal.*, 201 Cal.App.2d 765, 20 Cal.Rptr. 516, 522 (1962). Since 1982 the FTC has interpreted "deception" in Section 5 of the Federal Trade Commission Act to require a showing of "potential deception of 'consumers acting reasonably in the circumstances,' not just any consumers." *Southwest Sunsites, Inc. v. F.T.C.*, 785 F.2d 1431, 1436 (9th Cir.1986) relying on *Cliffdale Assocs., Inc.*, 3 CCH Trade Reg.Rep. ¶ 22,137, 103 F.T.C. 110 (1984).

In short, in view of the allegations here, the false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer.

### C. *The Allegations*

#### 1. *Standards*

█ Advertising that amounts to "mere" puffery is not actionable because no reasonable consumer relies on puffery. The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions. *See Cook, Perkiss & Liehe*, 911 F.2d at 246. Whether the alleged misrepresentations amount to mere puffery may be determined on a motion to dismiss. *Id.* at 247. Similarly, if the alleged misrepresentation, in context, is such that no reasonable consumer could be misled, then the allegation may also be dismissed as a matter of law.

#### 2. *Haskell v. The Reader's Digest Association*

At paragraph 11 of the complaint, the alleged misrepresentations are detailed. (*See* Appendix A.)

█ (a) ¶¶ 11(A), (B), (F), and (I) address statements to the effect that the recipient has a real chance to win, for example, "You've never been closer to having a chance to win $5,000,000.00" or that the recipient is lucky or pre-selected. At worst these statements are mere puffing. Any reasonable recipient, even if unsophisticated, understands that these are mass mailings as part of an advertising campaign. The rules are

---

**10.** The statement in some of the case law to the effect that § 17500 protects "unwary consumers" is only descriptive of the effect of § 17500 and does not set the standard for liability. The reasonable consumer may well be unwary. The use of this language does not suggest that the Act protects the unwary, unreasonable consumer.

Nor do statements that the Act protects the "public as a whole" suggest a different standard from the average or reasonable member of the public. *See Sunset House Distrib. Corp. v. Coffee Dan's, Inc., supra,* 240 Cal.App.2d 748, 50 Cal.Rptr. at 54 ("the public as a whole, acting as reasonable persons").

set forth clearly, in a box headed "How the Sweepstakes Works," and reveal the projected odds of winning any prize. These allegations are dismissed.

(b) ¶¶ 11(C), (G), (H), and (O) address statements concerning the amount of the prize as $5 million. Plaintiff contends that the statements and pictures of checks are misleading because the amount will be reduced by taxes and will be paid over time. Yet the disclosure that the prize is paid in annual payments over 30 years is repeatedly made with more than sufficient prominence. The rules state that taxes are to be paid by the winner, and even if they did not, no misrepresentation as to responsibility for taxes is made or is fairly inferred. These claims fail.

(c) ¶¶ 11(D) and (K) concern statements to the effect that time is of the essence and that failure to return the entry by a certain date will forfeit the recipients' chances of winning. Alternatively, an early entrant is entitled to an additional $100,000 and is a "preferred customer." The plaintiff claims that statements such as these are misrepresentations because recipients may well receive future opportunities to enter. But the statements do not suggest that other opportunities will not be provided, only that this opportunity is foreclosed if not acted upon. There is nothing misleading about these statements. To the extent that they seek to create a sense of urgency they are a form of puffing typical of the "don't delay" exhortation that consumers hear and ignore daily.[11] These allegations are dismissed.

(d) ¶ 11(E) attacks the statement that recipients who order will receive priority handling as a "preferred customer." Plaintiff contends that this statement, in conjunction with the statements in ¶¶ 11(L) and (M), providing a special contest for those who do order, suggests that the chances of winning will be enhanced if the recipient orders a subscription when this is not true (and would violate the California Lottery Statute were it

true). RDA argues that in numerous places the solicitation states that those who do not order are still eligible for the sweepstakes if they return the entry form in the "no" envelope. The "preferred customer" language appears in several places in the mailing to describe recipients who have ordered magazines in the past and are eligible for an additional $10,000 prize. But the term "preferred customer" is never used in the exemplar to imply that such recipients will receive "priority" treatment or any advantage in the sweepstakes. It is possible that plaintiff may have other exemplars in which a suggestion of priority or advantage is made, and this would provide a basis for an amended complaint. As it is, however, the allegation is unsupported by the exemplar and no reasonable recipient would understand the "preferred customer" language in the way alleged in the complaint. This allegation is dismissed.

(e) ¶ 11(J) concerns the fashion in which the official rules are printed but alleges no misrepresentation. Although the sweepstakes rules appear in smaller type than the words in the advertisement, they are not illegible or misleading. ¶ 11(N) addresses the statement that the letter is from the "treasury department" or contains "official business." All of the envelopes clearly state that the sender is the Reader's Digest Association, and this is made equally apparent by the contents of the envelope. Both of these allegations are dismissed.

3. *Haskell v. American Family Publishers*

At paragraph 10 of the complaint, the alleged misrepresentations are identified as follows:[12]

(a) ¶¶ 10(A) and (M) address statements allegedly to the effect that the recipient is a finalist or winner who has already won $10 million. Viewed in context this allegation is not well taken. The complaint alleges that the solicitation states that the recipient "has just won Ten Million Dollars!" In fact, the

---

**11.** The court notes that RDA does not cite to the place in the exemplars where the statements quoted in the complaint are made concerning the one time nature of the solicitation.

**12.** (*See* Appendix B.)

exemplar states, "If the Address Label below contains the winning number and you return it .... you'll see on NBC TV that you've just won ten million dollars!" No reasonable recipient could view this mass mailing as an announcement that the recipient in fact had been selected as the winner. The solicitation clearly requires additional action by the recipient before the recipient could even be eligible for the prize. This claim is dismissed.

▆ (b) ¶¶ 10(B) and (N) address statements to the effect that the recipient is a finalist who is now just one step away from winning. The exemplar reveals that the use of the word "finalist" and "winner" are at most a form of puffing. Indeed, the exemplar implicitly acknowledges that many who receive the solicitation ignore it by warning that in some instances those who ignored the solicitation had a winning number. These allegations are dismissed.

(c) ¶¶ 10(C), (D), (H), and (K) address statements to the effect that the winner will be a millionaire and that the value of the grand prize is $10 million to be paid in "cash." The official rules, the photographs of the prize money, and the official prize registration contained in the mailing clearly convey that the prizes are paid in installments. To the extent that plaintiff contends that the term "cash" is misleading because payments are actually made by check, the allegation is dismissed. The term "cash" means payment "in money or by check." American Heritage Dictionary 244 (2d Coll. Ed.1985). There is no false statement concerning tax consequences. These allegations are dismissed.

(d) ¶ 10(E) addresses a statement to the effect that failure timely to return the entry papers will forfeit the recipient's right to compete for the prizes. American Family Publishers does not address this allegation in its separate brief and the court is unable to locate in the exemplar the language paraphrased in the complaint. The exemplar states that if the recipient has the winning

entry and fails to return it then the recipient will lose his or her place to someone else. This is not a misleading statement, and this allegation is dismissed.[13]

(e) ¶¶ 10(F), (G), and (O) address statements allegedly implying that those who purchase magazines will be better postured to win by receiving "priority treatment." [14] For example, the exemplar states that by ordering magazines and affixing the "express stamp," "you're sure of getting the FASTEST ENTRY AND PROCESSING." Also, by affixing the "yes" stamp—indicating a magazine order—"we'll be able to spot your order immediately and give it top priority." The exemplar also warns that failure to order could lead to the dropping of the recipient from future mailings:

> We really regret it, but we simply cannot afford to keep on writing to groups of people who never buy magazines ... Those who are dropped now will miss out—there's no guarantee of another chance for them. There are some terrific opportunities coming up, and you can protect YOUR place.

By contrast, those who do order will "be included in all the great news just ahead!"

Defendant points out that the exemplar also states in the official rules that no purchase is necessary. According to defendant, all that is intended, or that can reasonably be understand, by the "priority" language is that those who order magazines will have their envelopes opened first.

Viewed in context, the language arguably is misleading to a reasonable consumer. The language is artfully drafted to imply some consequence for not ordering magazines which may affect the recipient's chances in the sweepstakes. Defendant does not demonstrate that no reasonable recipient could be misled by the language cited in ¶¶ 10(F), (G), and (O) of the complaint. The motion to dismiss is denied as to these sections.

---

**13.** Plaintiff may be able to demonstrate by other exemplars that the alleged statements are misleading in context. The complaint does not quote the precise language.

**14.** The allegation in part (O) of paragraph 10 concerns a statement that the recipient is a preferred customer because of past purchases. The exemplar does not include this language.

(f) ¶ 10(I) alleges that statements and pictures create a false statement of the lifestyle a winner could reasonably expect. These statements are either not misleading or constitute harmless puffing. The allegation is dismissed.

(g) ¶¶ 10(J) and (L) allege that various statements in the mailer imply sponsorship by NBC or that the winner will be announced "on" the show as opposed to "during" the show in a commercial break. These allegations are without substance and are dismissed.

(h) ¶ 10(M) attacks the print size used for the sweepstakes rules in comparison to the size of the advertising language. The rules are not illegible and their size alone does not make them misleading. The allegation is dismissed.

### 4. *Haskell v. Publisher's Clearing House*

The alleged false statements are detailed at paragraph 10 of the complaint. (*See* Appendix C.)

(a) ¶¶ 10(A), (B), (L), (N), and (Q) allegedly exaggerate the recipient's chances of winning or imply that the recipient has already won. In context the alleged statements are not misleading as a matter of law but are at worst a form of puffing. No reasonable consumer would believe that the solicitation amounted to a declaration that the recipient had already won or that the recipient's status as a "finalist" or "guaranteed finalist" was of any material significance.

(b) ¶¶ 10(C), (D), (H), (I), (K) and (M) allege that the mailing exaggerates the amount and value of the prize by misrepresenting, through photographs of houses and cars and the like, the lifestyle available to a prizewinner, by failing to disclose that the payments are made over time, and by failing to discuss tax consequences. These claims are without merit. The photographs are not misleading. The official rules are not in illegibly small print, and clearly set forth that the payments are to be made over time and that tax consequences are the responsibility of the winner.

(c) ¶ 10(J) concerns the television announcement of the winner and the allegation that the mailing implies an endorsement of the sweepstakes by NBC. The statement as to when and where the winner will be announced is not misleading and does not imply an endorsement. At most the language implies that the winner could be announced on the news itself, suggesting that the event is of national interest. If this is misleading, it is nothing more than puffing.

(d) ¶¶ 10(E) and (O) address statements in the mailings that allegedly create a false sense of urgency regarding the time for reply. In particular, plaintiff complains that the mailing does not reveal that there will be future opportunities to enter the sweepstakes. These statements are not misleading. The mailing does not disguise that there may be future opportunities to enter the sweepstakes. Indeed, the official rules explain that "you can improve your chances of winning by entering every time you hear from us."

(e) ¶¶ 10(F) and (G) address plaintiff's claim that the mailing suggests that a magazine order enhances one's chances of winning the prize. Unlike the American solicitation, however, the PCH mailing does not remotely imply that an order increases one's chances of success. The "express entry" form, available to those who order, states that if the recipient orders a magazine, "we'll automatically enter you in every contest in this Bulletin ... That's all you have to do." It does not claim "priority" treatment. Indeed, it disclaims any advantage to those who order: "If you're not ordering this time, enter our Sweeps the way you normally would. Either way, Good luck!" (Exhibit A–6.) The official rules state in bold, capitalized print: "NO PURCHASE NECESSARY TO ENTER AND WIN." (Exhibit A–4.) The statement that those who do not order may be dropped from future mailings is also couched in terms that do not suggest any adverse consequence to the recipient's chances of prevailing with this entry form. After stating that this may be the last mailing, the form states "Even if you decide not to order, enter and try your luck in our Sweeps anyway." There is none of the vague language about foregoing future good news that is included in American's warning. These claims are dismissed.

(e) ¶¶ 10(P), (Q), and (R) deal with statements concerning the skill contest. 10(Q) and (R) are but puffing. 10(P) is not misleading and does not suggest that a magazine order will enhance one's chances of winning the sweepstakes. These claims are dismissed.

### 4. *Haskell v. Time Warner, Inc., Time Inc.*

#### a. *Time Warner's Motion to Dismiss*

 Plaintiff sues defendant Time Warner as the alter ego of Time, Inc. and American Family Publishers. Time Warner seeks dismissal on the basis that there is no reason to ignore its corporate structure. The decision to pierce the corporate veil is guided by three factors: (1) the amount of respect given to the separate identity of the corporation by its shareholders; (2) the degree of injustice visited on the litigants by recognition of the corporate entity; and (3) the fraudulent intent of the incorporators. *Board of Trustees v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 772 (9th Cir.1989). In *Valley Cabinet,* the Ninth Circuit refused to pierce the corporate veil to force the majority shareholders to pay the corporation's debts where there was adequate capitalization at the inception, separate federal and state tax returns were filed and separate records had been kept. Here, Time and Time Warner also keep separate records. With annual sales of $2 billion, Time should be able to respond to any restitutionary award. Also, Haskell has not alleged that Time was fraudulently incorporated in order to protect Time Warner. Because Haskell has failed to allege sufficient facts to warrant piercing the corporate veil, Time Warner is dismissed from the suit.

#### b. *Time, Inc.'s Sweepstakes*

The alleged misstatements in Time's sweepstakes are detailed at paragraph 24 of the complaint. (*See* Appendix D.)

(a) ¶¶ 24(A), (H), and (K) address statements in the mailings that allegedly exaggerate the recipient's chances of succeeding, imply that the recipient is lucky, or state that the recipient is already a winner. These statements, in context, are not misleading. It is clear from the exemplar that no reasonable addressee could believe that the mailing announced that the addressee was already the winner or was particularly lucky. The official rules disclose that distribution of the sweepstakes mailer "is estimated not to exceed 900 million." (Exhibit A.) The statement "you're the winner" is preceded by "if you return the grand prize winning entry, we'll say." (*Id.*) These allegations are dismissed.

(b) ¶¶ 10(B), (C), (E), (F), (G) and (J) address the amount of the prize and plaintiff's claim that the mailer exaggerates the prize by failing to disclose that it is paid over time and that taxes may be levied. The exemplar demonstrates, however, that Time fully and repeatedly discloses that the payments are made in installments rather than as a lump sum. The mailing also discloses that a hefty tax can be expected on the prize winnings by providing for a tax bonus prize. (Exhibit A.) The pictures of the lifestyle a winner might attain and the replicas of checks are either not misleading or constitute harmless puffing. These allegations are dismissed.

(c) ¶ 10(D) addresses the alleged false sense of urgency generated by the statement that the entry must be returned by a specified date. In fact, the exemplar explains clearly that only eligibility for a bonus prize requires a prompt response by a certain date. This allegation is dismissed.

(d) ¶ 10(K) alleges that the use of terms such as "valued customer" creates the impression that a purchase order will increase the odds of winning. This claim is dismissed. The rules and materials repeatedly state that no purchase is required. Nor is there any language suggesting that those who order will receive "priority" or any other advantage.

(e) ¶ 10(I) attacks the size in which the rules are printed. The rules are not illegible or misleading. The allegation is dismissed.

## II. *Contest and Lottery Claims*

 Defendants also move to dismiss plaintiff's claim that the sweepstakes constitute illegal contests or lotteries. Under Cali-

fornia law, contests are subject to special disclosure requirements. *See* Cal.Bus. & Prof.Code §§ 17539.1–3 (West 1987). The term "contest" is defined to include

any game, contest, puzzle, scheme or plan which holds out or offers to prospective ... participants the opportunity to receive or compete for gifts, prizes, or gratuities as determined by skill or any combination of chance and skill and which is, or in whole or in part may be, conditioned upon the payment of consideration.

Cal.Bus. & Prof.Code § 17539.3(e) (West 1987). A lottery is defined as

any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property ...

Cal.Penal Code § 319 (West 1988).

Haskell asserts that defendants' "sweepstakes"[15] are actually contests that require skill and that are conditioned upon payment of consideration. In the alternative, Haskell asserts that these sweepstakes are "illegal lotteries."

These allegations are without merit. Plaintiff concedes that no purchase is required to enter defendants' sweepstakes, but instead asserts that the payment of twenty-nine cents postage is "valuable consideration." This assertion is untenable. The California Supreme Court has held that a requirement that a sweepstakes entrant deposit the entry form at the sponsor's place of business is not "valuable consideration" sufficient to state a cause of action under California law. *California Gas Retailers v. Regal Petroleum Corp.*, 50 Cal.2d 844, 861–62, 330 P.2d 778 (1958). The time, energy, and ex-

pense required under those rules exceeds the twenty-nine cents required here.[16] Thus, plaintiff's claim that the sweepstakes themselves amount to illegal lotteries or contests is dismissed since the definitions of both "contest" and "lottery" require the payment of consideration. Plaintiff's causes of action under California's contest and lottery statutes are dismissed.[17]

 To the extent that Haskell attacks the separate "skill contests" which RDA and PCH concededly administer, the claims are also dismissed. These skill contests are distinct from the sweepstakes and are only open to those who make an order and enter the contest. With respect to RDA, plaintiff appears to attack the invitation to play the contest, which RDA agrees involves no skill. But the invitation to enter the contest is not the contest itself, and plaintiff fails to detail any claims regarding the actual skill contest. This claim against RDA is dismissed for failure to plead with particularity. Fed.R.Civ.P. 9(b). With respect to PCH, its "Presidential Skill Contest" requires listing presidents in order of date of service, answering an essay question, and a "wordfind." (PCH Exs.Supp.Mot.Dismiss, Ex. B.) In order to qualify as a contest under the statute, the game must require some combination of skill and chance, but skill need not dominate the game. *See* Cal. Bus. & Prof.Code § 17539.3(e) (West 1987); *In re Allen*, 59 Cal.2d 5, 6, 27 Cal.Rptr. 168, 169, 377 P.2d 280, 281 (1962). In considering whether a game requires skill, the court looks to whether the players "exercise some control over the outcome." *Finster v. Keller*, 18 Cal.App.3d 836, 844, 96 Cal.Rptr. 241, 246 (1971). PCH's game requires skill. The rules explain how entries are judged and

---

**15.** The term "sweepstakes" is used in text to refer to the mass mailing entries that do not require any purchase to enter. The term "skill contest" is used to describe the mailings that are sent only to customers after they have placed their subscription orders.

**16.** Haskell urges the court to follow the reasoning in *State v. Reader's Digest Assoc., Inc.*, 81 Wash.2d 259, 501 P.2d 290 (1972). In *State v. RDA*, the Washington Supreme Court held that "the time, thought, attention and energy expended by members of the public in studying ... advertising" is consideration sufficient to trans-

form the Reader's Digest sweepstakes into an illegal lottery under Washington law. Haskell has failed to distinguish *State v. RDA* from *California Gas Retailers* and the court declines to give short shrift to a decision of the California Supreme Court on an issue of California law.

**17.** It is also apparent from review of the exemplars that the sweepstakes do not require any skill. Similarly, the allegations in the complaints, even if true, do not establish any requirement of skill to enter the sweepstakes. This is an alternative ground on which the illegal contest claims are dismissed.

players can improve their responses and, thus, their chances of winning. These contests include both skill and consideration and are not, therefore, illegal lotteries. Plaintiff's claim that PCH's skill contest is an illegal lottery is dismissed.

### III

For the reasons stated above, the court orders:

1. Plaintiff's claims of false or misleading advertising and unfair competition are dismissed in major part as identified above. This dismissal is without prejudice.

2. Plaintiff's claims of violation of California's contest and lottery statutes are dismissed for failure to state a claim on which relief may be granted. This dismissal is without prejudice although it seems unlikely that plaintiff can allege the necessary consideration or skill.

3. Plaintiff may file amended complaints within 60 days. Any amended complaint should include, as an attachment, exemplars of the mailings relied upon in the complaint.[18]

4. Defendant Time Warner is dismissed from suit.

IT IS SO ORDERED.

### *APPENDIX A*

As to RDA, Haskell points to the following as false statements:

(1) "You are currently in possession of a very unique AND valuable piece of mail." "You are being given an opportunity that only a select group of CALIFORNIA residents are receiving. And that is the opportunity to enter the $12,000,000.00 Sweepstakes."

(2) On the envelope, statements that the addressee "Will Win Millions" "Your chance to win is real—more real than you're probably aware of," and "This could be the closest you've ever been to a lifetime of financial security."

(3) "You've never been closer to having a chance to win $5,000,000.00" and "You're only one stage away."

(4) "Five Million Dollars Guaranteed" and "Grand Prize" has a value of $5 million.

(5) "Failure to respond by July 8, 1993 will result in forfeiture of your five million dollar eligibility."

(6) If the addressee orders merchandise, he or she will receive "priority in handling" as a "Preferred Customer."

(7) "Have you ever wondered where some of your Nevada County neighbors get all their money from? New color TV sets— New Clothes—Big Vacations—HOW DO THEY DO IT? Some of the answers may surprise you. Some of the money your neighbors are spending probably came from READER'S DIGEST."

(8) "You could build a fabulous home in any neighborhood you choose ... buy a new car every year ... take exciting vacations across America or anywhere in the world ... and still have plenty left to insure a 'worry free' life for your entire family ..."

(9) The winners will be "millionaires," "multi-millionaires" and "being a multi-millionaire means *no spending limits.*"

(10) The recipient is "lucky;" "Your name could be Lucky;" and "Thousands have been eliminated in the process. And I am delighted to inform you that your name ... is one of the lucky ones."

(11) The Official Rules are "in exceedingly fine print and printed on the back of the entry form" so that recipient must return the rules with his or her entry.

(12) If the entrant returns the entry by an early date he or she will be entitled to an additional $100,000.00 as a "preferred customer."

(13) Only people who order will be entitled to participate in a "Special Skill Contest."

(14) Only people who order will be entitled to participate in a "Find the Lucky Dominoes" game.

(15) The letter is sent from the "Treasury Department" and is "Official Business."

---

**18.** At oral argument, counsel for plaintiff displayed a box of mailings and indicated that it might be necessary to file the entire box. If it is necessary to do so, so be it. But it seems unlikely that a multitude of exemplars must be filed to withstand a motion to dismiss, and the court would discourage such a response to this order.

(16) Replicas of 30 checks made out in addressee's name along with statements that "With your first check for $167,000 you could pay off all your debts and buy whatever you want." "With a check for $167,000.00 you could buy a new house in the best part of town," or "charter an oceanliner for a six-month cruise."

### APPENDIX B

As to American, plaintiff points to the following alleged misstatements:

(1) Addressee "has just won Ten Million Dollars!"

(2) "These Finalist Papers have been issued ..." to the addressee "in recognition of the fact that you have made it through all of the preliminary phases and are now one of the Grand Finalists in the only group from which the $10,000,000.00 winner can emerge."

(3) The addressee has won $10 million "Cash" and that the prize is "All cash—All for you."

(4) Prior winners have been paid their prizes of $1 million, $2 million and $10 million in "cash."

(5) If the addressee orders merchandise, "American Family will give your reply top priority ..." and "Customer replies are processed first."

(6) "Warning: if you do not upgrade your status by ordering, you could forfeit any rights to future mailings."

(7) Pictorial depiction of houses, cars, vacations, trips and boats.

(8) Statement of the lifestyle a winner could expect to live, including "parlay your Ten Million into Twenty Million Dollars ... Thirty Million Dollars ... or even Fifty Million Dollars over the years," and "The home of your dreams—anywhere in the world! ... fly away on a first class vacation—at a moment's notice! ... buy your favorite car—in every color!" and "You could move into the home of your dreams—a villa by the sea perhaps, or a private chalet in the mountains. Fill it with servants ... hire a chauffeur ... park a fleet of luxury cars in the driveway ..."

(9) The winners will be announced "June 30—On NBC's Today Show."

(10) The winners will be "millionaires."

(11) "If you are as *lucky* as Marjorie Godzik, we'll announce your name on NBC's Today Show, June 30th."

(12) The Official Rules printed in 8 point medium condensed type while the statement that the recipient is a winner is in 36 point extra bold type.

(13) The addressee is "now only one step away from winning the Ten Million Dollars ..."

(14) The addressee is a preferred customer due to past merchandise orders and is awarded additional chances of winning by way of additional assigned numbers.

(15) If the addressee fails to reply by a certain date, the right to compete for certain prizes will be forfeited.

### APPENDIX C

As to PCH, plaintiff cites the following false statements:

(1) The addressee "may already have won $10,000.00 or $10,000,000.00" and in smaller type: "You've won at least $10,000.00 if one of your personal prize numbers matches the *winning* number on the check list below" and "One prize number on this check list is a Guaranteed Winner."

(2) "Thousands have fallen by the wayside ... but you have survived, and are now one step away from the FINAL ROUND where you could win $10,000,000.00."

(3) The "prize value" is "$10,000,000.00."

(4) Prior winners have won $10 million and a letter from a prior winner that states "So listen to a real live $10,000,000.00 winner."

(5) If the addressee fails to return the entry by a certain date, he or she will forfeit the right to compete for a specific prize.

(6) If the addressee orders magazines, the entry will receive priority in handling, e.g., "An order gets you express entry," and "The fastest way to enter you've ever seen! If your entry comes in on time with at least one Order Coupon on it, we'll automatically enter you in every contest in this bulletin."

(7) A threat to drop the addressee from future mailings if the addressee does not order at this time.

(8) Photographs of the type of house, cars, vacations, trips and boats the winner will be able to purchase with the prize money.

(9) "Financial security is foremost in everyone's thoughts these days ... Will you buy that brand-new sports car you see zipping down the highway ... take an extended world tour ... relax on your private island retreat ... skim across the ocean in your own new speed boat."

(10) Statements that winning numbers will be announced on "NBC Nightly News with Tom Brokaw."

(11) Winners will be "millionaires" or "multi-millionaires."

(12) Statements that the recipient is "lucky."

(13) The Official Rules appear in fine print on the back of the entry return envelope.

(14) "You are one step away from winning $10,000,000.00" and that the entry documents are "final round" and the recipient a "finalist" or a "guaranteed finalist."

(15) The addressee will receive an additional advantage if he or she enters by an early date entitling the addressee to membership in the President's Club and a chance to receive an extra "Instant $1,000,000.00."

(16) Only those who order will be entitled to participate in a "Special Skill Contest."

(17) The recipient has tied for the $1,000,000,00 prize and an entry in the contest could break the tie in the recipient's favor.

### APPENDIX D

As to Time and Time Warner, plaintiff attacks the following statements:

(1) "You have just won One Million Dollars!" "Congratulations! You are the guaranteed winner of $1,000,000.00" and "You're our biggest winner in history."

(2) The addressee has won $1,666,675 in "Cash," and the prize has a "Certified Prize Value" of $1,666,675.

(3) Prior winners have been awarded their prizes of $1,000,000.

(4) If the addressee fails to return the entry by a certain date, the addressee will forfeit the right to compete for a specific prize.

(5) A false pictorial depiction of what the winner will be able to purchase with the prize money.

(6) A false statement of the lifestyle a winner would reasonably expect to be able to live.

(7) The winners will be "millionaires" and their names will be placed on an "official millionaires list."

(8) The recipient is "lucky."

(9) The official rules are confusing, reinforcing the impression that a purchase improves the odds, and in small print.

(10) Graphic replicas of checks in the sum of $1,000,000.

(11) "... as a valued customer, here's another chance to win ..."