Michael **FREEMAN**, Plaintiff–Appellant,

v.

The **TIME, INC.,** Magazine Company, et al., Defendants–Appellees.

Nos. 94–55089 and 94–55091.

United States Court of Appeals, Ninth Circuit.

Submitted July 13, 1995.*

Decided Aug. 21, 1995.

Order and Opinion filed Oct. 6, 1995.

* The panel unanimously finds this case appropriate for decision without oral argument. Fed. R.App.P. 34(a); 9th Cir.R. 34–4(c).

Michael D. Freeman, Encino, CA, in pro per for plaintiff-appellant.

Robert C. Vanderet, O'Melveny & Myers, Los Angeles, CA, for defendants-appellees.

Before: FARRIS and O'SCANNLAIN, Circuit Judges, and TASHIMA, District Judge.**

## ORDER

The Memorandum disposition, filed August 21, 1995, is redesignated as an authored Opinion by Judge Tashima.

## OPINION

TASHIMA, District Judge:

These are two consolidated appeals from the district court's dismissal of two separate actions alleging that sweepstakes promotional materials were fraudulent and misleading.

## FACTS

Plaintiff-appellant Michael Freeman ("Freeman") received two separate mailers for the "Million Dollar Dream Sweepstakes," a promotion of defendant-appellee Time, Inc. ("Time").[1] The mailers, personalized by computer, are similar in content and format—both contain statements in large type representing that Freeman won the sweepstakes, qualified by language in smaller type indicating that Freeman would win only if he returned a winning prize number. For example, the *Sports Illustrated* promotion states "If you return the grand prize winning number, we'll officially announce that MICHAEL FREEMAN HAS WON $1,666,-675.00 AND PAYMENT IS SCHEDULED TO BEGIN." It continues, "If you return the grand prize winning entry, we'll say $1,666,675.00 WINNER MICHAEL FREEMAN OF ENCINO, CALIFORNIA IS OUR LARGEST MAJOR PRIZE WINNER!" The promotion provides, "We are now scheduled to begin payment of the **third and largest prize—the $1,666,675 listed next to the name MICHAEL FREEMAN!** In fact, arrangements have already been made which make it possible to begin payment of the $1,666,675 DIRECTLY to MICHAEL FREEMAN if one of your numbers is the grand prize winner." It concludes that "[i]f

you return your entry with the Validation Seal attached and your entry includes the grand prize winning number, MICHAEL FREEMAN IS GUARANTEED TO BE PAID THE ENTIRE $1,666,675.00!"

The mailer includes an "Official Entry Certificate" on which recipient could check a box marked "YES! [Send free gifts and magazine subscription] Also, enter me in the sweepstake and notify me if I'm a winner" or a box marked "NO! [Don't send gifts and subscription] But enter me in the sweepstakes." Separate return envelopes are enclosed for "yes" and "no" entries—printed outside both envelopes is the statement "enter me in the sweepstakes and notify me if I am a millionaire."

The "Million Dollar Dream Sweepstakes Official Rules" provide that random selection of the winner would take place by April 1, 1994 and indicate that "[c]hances of winning are dependent upon the number of entries distributed and received. Distribution of the sweepstakes is estimated not to exceed 900 million." The rules provide an address from which it was possible to obtain a list of major winners, available after August 1994.

Freeman filed a complaint in California Superior Court on April 12, 1993 regarding the *Money* magazine promotion, alleging six causes of action: (1) common law breach of contract; (2) common law fraud; (3) unfair and misleading business practices in violation of California's Unfair Business Practices Act ("UBPA") (Cal.Bus. & Prof.Code § 17200); (4) untrue and misleading advertising in violation of UBPA (Cal.Bus. & Prof.Code § 17500 *et seq.*); (5) failure to include an "odds of winning" statement in violation of Cal.Bus. & Prof.Code § 17537.1; and (6) unfair and deceptive practices under the California Consumer Legal Remedies Act (Cal. Civ.Code § 1770). On April 27, 1993, plaintiff filed an action alleging identical causes of action with respect to the *Sports Illustrated* promotion. Both actions seek monetary damages, restitution and disgorgement of profits, and injunctive relief. Time removed

---

** Hon. A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation.

1. One promotion was from *Money* magazine and the other from *Sports Illustrated,* both of which are Time publications.

these two actions to federal court on May 26, 1993 and June 4, 1993, respectively.

Shortly after removal, Time moved to dismiss both complaints pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. Freeman conceded his fifth cause of action. The district court granted both motions on December 6, 1993 without discussion.[2] Plaintiff filed notices of appeal on January 3, 1994.[3] The parties stipulated request to consolidate the two actions was granted on March 23, 1994. The district court had jurisdiction under 28 U.S.C. §§ 1441(a) & (b) and 1332(a)(1). We have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

Freeman does not challenge the dismissal of his breach of contract and fraud claims. He argues only that the district court erred in dismissing his third, fourth and sixth causes of action for violations of the UBPA and the California Consumer Legal Remedies Act.

### I. Standard of Review

■ This court reviews *de novo* a district court's dismissal of an action on the merits for failure to state a claim. *Everest & Jennings, Inc. v. American Motorists Ins. Co.,* 23 F.3d 226, 228 (9th Cir.1994). A complaint should be dismissed when "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Where "[t]here is no dispute or conflict in the evidence.... the finding of the trial court that the advertisements are not in violation of the applicable provisions of the Business and Professions Code amounts to a conclusion of law." *State Board of Funeral Directors & Embalmers v. Mortuary in Westminster Memorial Park,*

271 Cal.App.2d 638, 642, 76 Cal.Rptr. 832 (1969). Questions of law are reviewed *de novo. Fort Vancouver Plywood Co. v. United States,* 747 F.2d 547, 552 (9th Cir.1984).

### II. Unfair Business Practices Act

■ The UBPA defines unfair competition to include "unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising." Cal.Bus. & Prof.Code § 17200. "California's statutory law of unfair competition ... authorizes actions for injunctive relief ... by certain state and local officers and persons acting for the interests of themselves or the general public." *Mangini v. R.J. Reynolds Tobacco Co.,* 7 Cal.4th 1057, 1061, 31 Cal.Rptr.2d 358, 875 P.2d 73 (1994), *cert. denied,* — U.S. —, 115 S.Ct. 577, 130 L.Ed.2d 493 (1994). California law "also authorizes courts to make such orders as 'may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by such unfair competition.'" *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1267, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992) (quoting Bus. & Prof.Code § 17203). The California Legislature considered the goals of deterring future violations and foreclosing retention of ill-gotten gains "so important that it authorized courts to order restitution without individualized proof of deception, reliance, and injury if necessary to prevent the use or employment of an unfair practice." *Id.*

■ The UBPA also contains a false advertising provision which prohibits dissemination of any statement concerning real or personal property for sale "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof.Code § 17500. Section 17535 authorizes injunctive relief and restitution for violations of the false advertising provision.

---

**2.** The district court's docketing sheet describes the order granting the motion to dismiss as "terminating case." "If it appears that the district court intended the dismissal to dispose of the action, [dismissal] may be considered final and appealable." *Hoohuli v. Ariyoshi,* 741 F.2d 1169, 1171 n. 1 (9th Cir.1984).

**3.** Time contends that Freeman failed to perfect his appeals because his notices of appeal were signed by a lawyer who was not, at that time, counsel of record. Time's motion to dismiss the appeals on this ground was denied on May 31, 1994.

"Any violation of the false advertising law, moreover, necessarily violates the unfair competition law." *Committee on Children's Television, Inc. v. General Foods Corp.,* 35 Cal.3d 197, 210, 197 Cal.Rptr. 783, 673 P.2d 660 (1983).

### A. Likely to be Deceived

■ "[T]o state a claim under the [UBPA] one need not plead and prove the elements of a tort. Instead, one need only show that 'members of the public are likely to be deceived.'" *Bank of the West,* 2 Cal.4th at 1267, 10 Cal.Rptr.2d 538, 833 P.2d 545 (quoting *Chern v. Bank of America,* 15 Cal.3d 866, 876, 127 Cal.Rptr. 110, 544 P.2d 1310 (1976)). Freeman argues that to demonstrate that "members of the public are likely to be deceived" he need show only that some members of the public, such as the elderly, minors or the mentally disadvantaged, are likely to be deceived. Time argues that the court must consider whether "a person of ordinary intelligence" would be misled.

In a virtually identical case involving the same Time promotion, the district court rejected the plaintiff's proposed "unwary consumer" standard in favor of a "reasonable person" standard. *Haskell v. Time. Inc.,* 857 F.Supp. 1392, 1398 (E.D.Cal.1994) (dismissing claims for false or misleading advertising and unfair competition); *see also State Board of Funeral Directors,* 271 Cal.App.2d at 642, 76 Cal.Rptr. 832 (applying standard of "what a person of ordinary intelligence" would conclude in false advertising case); *Audio Fidelity, Inc. v. High Fidelity Recordings, Inc.,* 283 F.2d 551, 557 (9th Cir.1960) (applying standard of "the eye of the ordinary purchaser" to the interpretation of unfair competition and misleading advertising under California law).

■ An "ordinary person" standard is not inconsistent with the standard of *Bank of the West*—to determine whether members of the public are "likely to be deceived" the court must apply some standard. Plaintiff admits that "California courts have looked to interpretations of similar provisions in federal law under the Federal Trade Commission Act." AOB at 13. *Haskell* noted that "[s]ince 1982 the FTC has interpreted 'deception' in Section 5 of the Federal Trade Commission Act to require a showing of 'potential deception of consumers acting reasonably in the circumstances,' not just any consumers." 857 F.Supp. at 1399 (quoting *Southwest Sunsites, Inc. v. FTC,* 785 F.2d 1431, 1436 (9th Cir. 1986)). *Haskell* further noted that

the reasonable person standard is well ensconced in the law in a variety of legal contexts in which a claim of deception is brought. It is the standard for false advertising and unfair competition under the Lanham Act, for securities fraud, for deceit and misrepresentation and for common law unfair competition. This list no doubt could be much expanded.

*Id.* at 1398 (citations omitted). "[B]y explicitly imposing a 'reasonable care' standard on advertisers, § 17500 implicitly adopts such a standard for consumers as well: unless particularly gullible consumers are targeted, a reasonable person may expect others to behave reasonably as well." *Id.* at 1399; *Compare Committee on Children's Television,* 35 Cal.3d 197, 197 Cal.Rptr. 783, 673 P.2d 660 (defendant's advertisements for sugar-filled cereals were targeted at children). In this case, the mailings were sent to millions of persons and there is no allegation that a particularly vulnerable group was targeted. "[I]n view of the allegations here, the false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer." *Haskell,* 857 F.Supp. at 1399.

■ Freeman argues that his complaint adequately alleges that members of the public would be deceived, since it is likely that the reader will review the large print and ignore the qualifying language in small print. This argument is not persuasive. The promotions expressly and repeatedly state the conditions which must be met in order to win. None of the qualifying language is hidden or unreadably small. The qualifying language appears immediately next to the representations it qualifies and no reasonable reader could ignore it. Any persons who thought that they had won the sweepstakes would be put on notice that this was not guaranteed simply by doing sufficient read-

ing to comply with the instructions for entering the sweepstakes.

Freeman further contends that the qualifying language in the promotion, even if read by the recipient, is ambiguous. He argues, for example, that the statement "If you return the grand prize winning number we'll officially announce that [you have won]" leaves room for the reader to draw an inference that he or she *has* the winning number. Such an inference is unreasonable in the context of the entire document. In dismissing the complaint against Time in *Haskell*, the court noted that such "statements, in context, are not misleading. It is clear from the exemplar that no reasonable addressee could believe that the mailing announced that the addressee was already the winner...." 857 F.Supp. at 1403. We agree. Any ambiguity that Freeman would read into any particular statement is dispelled by the promotion as a whole.

■ Freeman argues that, although he did not plead it, his complaint states a claim for violation of provisions governing the operation of certain contests found in Cal.Bus. & Prof.Code § 17539.1(a)(8). This section prohibits "representing directly or by implication that the number of participants has been significantly limited, or that any particular person has been selected to win a prize unless such is the fact." This code section, however, clearly does not apply to the contest in question—the section is limited to a contest involving "skill or any combination of chance and skill and which is, or in whole or part may be, conditioned upon the payment of consideration." Cal. Bus. & Prof.Code § 17539.3(e). The entry here expressly notes that no payment or purchase is necessary to win.

Freeman failed to state a claim that the promotions violated the UBPA; therefore, the district court's dismissal of such claims is affirmed.

### III. Consumers Legal Remedies Act

■ California's Consumer Legal Remedies Act provides that "[a]ny consumer who

suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against such person" for actual damages, injunctive relief, restitution of property, punitive damages, and other relief that the court deems proper. Cal.Civ.Code § 1780(a). Freeman claims that Time violated the prohibition on "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." Cal.Civ.Code § 1770(n). According to Freeman, the promotion falsely represents that the reader has won and thus been conferred certain rights. As discussed above, when read reasonably and in context, the promotion makes no such false representation.[4]

Freeman's complaint does not state a claim under the California Consumer Legal Remedies Act and the district court's dismissal of this claim is also affirmed.

**AFFIRMED.**

---

4. Moreover, it is doubtful that Freeman has "suffer[ed] any damage as a result of" the promotion. The only possible damage is a *de minimis* 29¢ for postage to mail in his entry.